AMERICAN TRUST & BANKING CO. et al. v. HEDGES et al.

Eastern Section. May 30, 1933.

Petition for Certiorari denied by Supreme Court, November 18, 1933.

Edward S. Abernathy, guardian ad litem, of Chattanooga, for appellants.

Sizer, Chambliss & Kefauver, of Chattanooga, for appellees.

PORTRUM, J. This bill was filed by the executors and trustees to construe the will of M. M. Hedges and for a declaration of a bequest to a legatee of a large portion of the income of the estate, vested in the testator's living grandchildren upon the death of their mother, the aforesaid legatee; and that the court direct the application by the trustees of these children's estate to their support and maintenance, a present necessity for the relief existing, and the application being to their best interest.

The minor defendants, through their guardian ad litem, concede the necessity and propriety of applying the income to their support and education, provided the court has the right to grant this relief. But he ably contends that the interest passing to the defendant grandchildren is contingent and rests only upon their attaining the age of twenty-one years, and then in equal portions with all living grandchildren, including those hereafter born. If the vesting of the estate is contingent upon these two contingencies, and it does not appear from the will that it was within the power of the trustees to make the application, then the chancery court is without power or right to direct the application. Stewart v. Hamilton, 151 Tenn., 396, 270 S. W., 79, 39 A. L. R., 37.

The foregoing statement narrows the issues to a construction of the will to determine what character of estate the grandchildren took upon the death of their mother, and was the right to make the application included in the power given to the trustees by the terms of the will? It is not necessary to make an extended statement of the facts, as they appear from the proof, for the evidence pertains principally to the issue of the present necessity to make the application, and this issue is not contested in this court. We will make a brief statement of the facts to reflect the present situation.

M. M. Hedges died August 8, 1929, leaving a large estate, its exact value is not shown, but the income derived from the estate approximates $100,000 annually, or did at the time of Mr. Hedges' death. Under his will he passed the legal title to the corpus of his estate to his executors and trustees, to be held during the life of the legatees named as life tenants, or possessing a life estate, and until the death of the surviving member, and thereafter if the youngest grandchild was not twenty-one years of age, until this child attained this age, when the estate was passed in fee to the grandchildren, or their children then living. After directing the disposition of the corpus of the estate, he disposed of the income. And the disposition of the income is the portion of the will to be construed. We will not now comment upon this portion, but reserve this matter until after the will is set out.

The testator named the following legatees with a life interest in the income: His widow, Mrs. Emmeline R. Hedges; a son, Lawrence S. Hedges, a shell-shocked veteran of the World War, now mentally incapacitated, with a regular guardian; another son, James R.

Hedges; and a daughter-in-law, Mary M. Hedges, wife of James R. Hedges. At the time of the testator's death there survived him four grandchildren, children of James R. and Mary M. Hedges, namely, Shirley M. Hedges, eighteen years old, Mertland McLain Hedges, II, sixteen years old, Mary Alice Hedges, fourteen years old, and Emmeline J. Hedges, three years old (the ages are as of the date of the filing of the bill), and since the testator's death another child was born to James R. and Mary M. Hedges, by name Laura S. Hedges, on April 10, 1932, which is the date of the death of the mother, who died in childbirth.

During the life of the wife, Mary M. Hedges, she and her husband, James R. Hedges, each received from the income of this estate more than $20,000, and the husband testified they saw no reason in accumulating the income, since their future was well provided for. He used his and his wife's yearly share in maintaining a comfortable standard of living, educating his children in expensive private schools, and in maintaining their home at an expense of about $1,000 per month. In this way they consumed their annual income. Upon the wife's death, her portion was no longer available to the husband for this purpose, since her interest passed to the grandchildren, and he found himself unable to pay from his portion his taxes, his debts, and maintain his home and educate his children.

James R. Hedges testifies his current income totals $53,000, and his taxes, interest on his obligations, and the payment of obligations currently due aggregate the sum of $44,300, leaving him for the maintenance of his home and the education of his children the sum of $7,500; that his expenses have increased since the death of his wife, leaving an infant child, and it is not possible for him to maintain his children in the standard they are entitled to.

The only other witness is the president of the American Trust & Banking Company, trustee, who stated that James R. Hedges was indebted to that institution, and that the institution as trustee was willing that the court apply the minors' funds to their support and education. He also states as his belief that the testator would have been willing that this be done under this emergency. There is no doubt of this conclusion had the testator foreseen the emergency.

We now come to the construction of the instrument; it is a long one, and we will only quote the residuary clause, which is the material clause. This is item VII of the will, and we are taking the liberty of designating the paragraphs by letters in parentheses, and in one instance we will divide one paragraph into two by inserting a parenthesized letter at the place in the paragraph we would make the severance. The paragraph is divided to illustrate and emphasize our construction, and the designation is to make it convenient to refer to the subject of each paragraph. For this same purpose we will also italicize certain phrases and words in the paragraph:

352

"Item VII

(a) "All the residue and remainder of the estate and property belonging to me at the time of my death, of every kind and character and wherever located, I give, devise and bequest to my Executors as Trustees to be held, administered and disposed of by them as follows:

(b) "Said Trustees will first pay from the net income of said fund the sum of Twenty-four Thousand ($24,000) Dollars per annum to my said wife, Emmeline R. Hedges, so long as she shall live. Said income is to be free of all taxes and charges of every character; and in addition to said income the said Trustees shall pay out of the income of my said estate the salary of the manager and foreman of my Walden's Ridge Place and they will also pay the taxes, insurance and outside repairs on my two residences hereinbefore referred to so long as my said wife chooses to occupy them, but she shall pay all inside repairs, improvements, etc., on both said places so long as she retains the use and occupancy thereof.

(c) "The remainder of the income of said estate, and the entire income after the death of my wife, shall be paid one-half to my son, James R. Hedges, and one-half to Mary M. Hedges, wife of my son, James R. Hedges, during their respective lives; provided, however, that if the said Mary M. Hedges shall hereafter become the wife of another man the share of said income herein given to her shall after such remarriage go to my grandchildren as hereinafter provided.

(d) "From and after the death of the said James R. Hedges and Mary M. Hedges, respectively, or, with respect to the said Mary M. Hedges, whenever her right to receive the share of income herein given her shall otherwise terminate as herein provided, the share of the income herein given to said respective parties, and after the death of the said Lawrence S. Hedges, the income given him in Item III hereof, shall be *held* and *administrated by my said Trustees* for the *use* and *benefit* of my grandchildren as herein provided, to-wit:

(e) "All my grandchildren *living at the time* of the *termination* of the *interests* of either the said Lawrence S. Hedges, James R. Hedges or Mary M. Hedges in said income, as hereinbefore provided, *shall* be *entitled* to *share equally* in the portion of the income herein given to the party or parties whose interests so terminate, *but no part of such income shall be paid to, or received by any of my said grandchildren until they respectively attain the age of twenty-one (21) years.* After said grandchildren respectively attain the age of twenty-one years the Trustees shall pay to them their proportionate shares of the *accumulated* income and shall thereafter pay to them their proportionate share of the future income as the same is collected and received by the said Trustees.

(f) "After the termination of the interests of all above named beneficiaries, to-wit, Lawrence S. Hedges, James R. Hedges and Mary M. Hedges, the entire income of said residuary estate shall be held

by the said Trustees for the *benefit* of my grandchildren and *paid out* to them as hereinbefore provided. The birth of additional grandchildren after one or more of my grandchildren shall have received from the Trustees their share of the income of said fund by virtue of having attained the age hereinbefore prescribed, shall not affect any such previous distribution; but such additional grandchildren shall, from the dates of their respective births, share proportionately with the other grandchildren in any accumulated income then undistributed and in all income thereafter to accrue. The corpus of said residuary estate shall be held and administered by the Trustees as aforesaid until the death of both my sons and determination of the interest of Mary M. Hedges in the income thereof, as hereinbefore provided, by death or otherwise, and until my youngest grandchild shall attain the age of twenty-one (21) years; and when all of said events have occurred said corpus shall then be divided equally among all by grandchildren then living; Provided, however, that in the event any of my grandchildren shall die before the time of the final distribution of the corpus of the estate leaving a child or children or direct descendants surviving, the share of each such deceased grandchild both in the corpus of said residuary estate and the income to accrue thereupon shall go to his or her descendants; and in the event any of said grandchildren shall die before the time of distribution leaving no direct descendants, the share which such deceased grandchild or grandchildren would have taken if living, both in the corpus and income of said estate, shall go proportionately to the surviving grandchildren.''

It is claimed, upon a proper construction of paragraphs D and E, the grandchildren upon the death of Mary M. Hedges took only a contingent interest to the income formerly enjoyed by Mary M. Hedges, and their estate was contingent upon them living to the age of twenty-one, and then its quantum was contingent upon there being no other grandchildren. Therefore they have no present interest, and may never have an interest, in the funds. And, in case all those die who are given a life interest, the grandchildren can acquire no interest in this estate until they become twenty-one years of age. If this be the correct interpretation, and in case all those die who have a present interest, then the grandchildren, and some of them undoubtedly will survive to the age of twenty-one would find themselves like Midas, who was given the power to turn what he touched to gold, but faced death, since his food and drink were turned to gold, but unlike Midas, they would have no Bacchus to remove the curse. It goes without saying that to accomplish this end we will not depart from the common and accepted meaning of the words used by the testator and give them a restricted meaning in order to reconcile them with other expressions used in the will.

Paragraph D provides, upon the death of Mary M. Hedges, her income "shall be *held* and *administrated by my said Trustees* for the *use*

and *benefit* of my grandchildren as herein provided. . . ." We think the word "administered" indicates purpose that the trustees expend this fund for the use and benefit of the grandchildren. This word as used is applicable prior to the grandchildren becoming twenty-one years of age, for in the so-called paragraph F the trustees are directed how to expend the fund after the children become twenty-one years of age, and provides ". . . shall be held by the said trustees for the benefit of my grandchildren and paid out to them as hereinbefore provided." That is, after a child becomes twenty-one years of age, it is to be held by the trustees and paid out, whereas before he becomes twenty-one years of age the trustees are to hold and administer for the use and benefit of said child. And before the child becomes twenty-one years old the trustees must hold for "the use and benefit," whereas after he becomes twenty-one years of age the trustees hold solely for the benefit. Certainly it is our duty to give this word "administered" its common and accepted meaning, unless it clearly appears another intention expressed by the testator is controlling. "Administer" is defined in 1 C. J., 1238, as follows:

"Administer. Etymologically, a word that would seem applicable to anything that could be done by the hand, or to be for another. The word has not a legal or technical import, but its primary and commonly accepted meaning is to give. In its ordinary accepted station the word means to furnish; to give; to dispense; to give, supply or dispense; to direct or cause to be taken; to supply, to furnish or provide with. . . ."

We quote one footnote:

"It is a word of general use, with a commonly accepted meaning, and where a person is charged with administering noxious medicine it is the same as charging him with giving such medicine. (Citing authorities.) In State v. Wilson, 71 Kan., 263, 265, 80 Pac. 565, it was contended that the word 'furnish' should have been added to this definition, but it was held that it was not necessary for the Court to use all the synonyms of the word in order to convey to the jury the correct definition."

Now the will does not provide that the fund be administered after the child becomes twenty-one years of age, for it provides the fund then shall be held and paid to the child. So it must have been intended to take care of just this situation which has arisen; it is conceded that, if the testator had foreseen this situation, he would have taken care of it, and we think the use by the testator of the word "administered" takes care of the situation. As long as this word is not stricken down or restricted in its meaning, it does take care of the situation; now is this purpose as evidenced by this word in conflict with this provision of the will "but no part of said income shall be paid to or received by any of my said grandchildren until they respectively attain the age of twenty-one years?"

As we have stated, after the grandchildren become twenty-one years of age the money is paid over to them, but before they obtain this age the trustees cannot pay it over to them or it cannot be received by them, but it must be administered by the trustees. We do not think these two provisions are in conflict, and full effect must be given to both provisions. It is a matter of common knowledge that the children of the rich are often spoiled by overindulgence and the free and unrestricted use of money. Prompted by the love for his grandchildren, and to guard against this danger, the testator provided that they should not be paid or receive any of the income prior to their majority. Here we find two purposes expressed in the will, and we see no obstacle in the way of carrying out both, and we are of the opinion the provisions are not in conflict.

In our discussion of the two provisions contained in paragraph D and E, and to that provision which says, "After said grandchildren respectively attain the age of twenty-one years the trustees shall pay to them their proportionate shares of the accumulated income, . . ." It may be argued that the word "accumulated" is in conflict with our construction of the word "administered;" we do not think so, the testator could have reasonably assumed that in the administration by the trustees all of the funds would not be needed and some would necessarily accumulate.

We are further of the opinion that upon the death of Mary M. Hedges her interests under paragraph designated E of the will vested in the living grandchildren, and it was not a contingent interest. And, if we will disregard the word "administered," found in paragraph D, above discussed, we can say their interest or enjoyment was deferred until they attained the age of twenty-one years.

There are two independent provisions in paragraphs E and F; paragraph E disposes of the income in case of death of the parent prior to the grandchildren attaining the age of twenty-one years, and paragraph F disposes of the income after the grandchildren become twenty-one years of age, and the corpus of the estate. Now, since the interest is vested, and only the enjoyment is deferred, then the court has authority to accelerate the enjoyment for the manifest interest of the children. Bennett v. Trust Company, 127 Tenn., 126, 153 S. W., 840, 46 L. R. A. (N. S.), 43, Ann. Cas., 1914A, 1045.

We think the chancellor correctly construed this will as empowering him to direct the trustees in the administration of this fund for the use and benefit of the minor grandchildren, since a present necessity existed, and his decree should be affirmed. The appeal was a limited one, and only brought up this question.

The chancellor's decree was for a temporary administration of these funds in behalf of the children to be used solely in the maintenance of the home and family and payment of the education and school expenses of said children. He ordered the funds paid by the trustees to the father, and the father to report the manner in which

he had expended the funds, and then provided: "Upon the coming in of such report the Court reserves the right to make such further order and decree with respect to the apportionment of said income and the manner in which, and the person against whom, it shall be charged as the Court may deem just and proper. At that time the complainants will also be permitted to make further applications if they should be so advised with respect to the income belonging to the minor defendants to accrue thereafter."

The appellees insist that the rights of the children are not final'y adjudicated, for the reason the court reserves the right to hereafter charge the father for the maintenance of his children, and to disallow him credit against their fund for their upkeep. And it is said that, since this issue is not finally determined, then the court was without power to grant even a discretionary appeal to this court pending a final determination. We have deferred the disposition of this motion until the last in order to make unnecessary two statements of the facts of the case. The chancellor did order the fund administered and paid over to the father for this purpose; if he uses the fund for another purpose, and dies, the children may be without a remedy. Rights and powers were declared by the chancellor, and the execution of the powers ordered. This was a determination within the meaning of the statute entitling the minors to an appeal. After this money has been spent by the father, this condition may have been so changed as to justify the chancellor in making the charge against the father and restoring the children's money to them, but, on the other hand, the father in the meantime may die insolvent, leaving the children without a remedy. We think it within the power of the chancellor to grant the appeal, and the motion is overruled.

The decree of the lower court is affirmed and remanded, and the cost of the appeal will be paid by the trustees.