The WILLIAM BUCHANAN FOUNDATION
et al., Appellants,

v.

John Ben SHEPPERD, Attorney General of
the State of Texas, Appellee.

No. 6813.

Court of Civil Appeals of Texas.
Texarkana.

Sept. 8, 1955.

University of Arkansas and certain members thereof, the State of Arkansas, its Governor and its Attorney General. Answers were filed by all defendants except the Arkansas defendants above named, which Arkansas defendants were duly served with non-resident notices under Rule 108, Texas Rules of Civil Procedure, but did not answer or otherwise appear.

The trial court (the trier of the facts as well as of the law in this cause) decreed that the primary beneficiaries of the trust are the residents of Bowie County, Texas, and of the counties adjoining thereto; that the William Buchanan Foundation must be domiciled in Texarkana, Texas; that under the terms of the trust such charitable enterprises, activities, and institutions should be established as to give full effect to the purposes of the trust and that such enterprises, activities, and institutions must be administered, managed, controlled and conducted in Bowie County, Texas, for the benefit of the residents of Bowie County, Texas, and of the counties adjoining thereto, and for the benefit of such other persons as in the judgment of the Trustees should receive the benefit of the activities or institutions so established.

The trial court enjoined the Foundation from fulfilling commitments theretofore made to the University of Arkansas in the amount of $500,000, and to the University of Texas in the amount of $38,000, and also enjoined the Foundation from conducting its charitable enterprises outside of Bowie County, Texas. The court also directed the Trustees of the Foundation to institute and establish in Bowie County, Texas, all charitable agencies, activities and institutions authorized and required by the trust and to administer, manage, control, and conduct said agencies, activities and institutions so established for the benefit of citizens and residents of Bowie County, Texas, and adjoining counties, and for the benefit of such other persons as in the judgment of the Trustees should receive the benefits of the agencies, activities and institutions so established. The defendants the William Buchanan Foundation and its Trustees, and the University of Texas and its Board of Regents have appealed.

Black & Stayton, Scott Gaines, Rupert R. Harkrider, Austin, for appellants.

John Ben Shepperd, Atty. Gen., W. V. Geppert, Marietta McGregor Payne, William H. Holloway, Asst. Attys. Gen., for appellee.

FANNING, Justice.

This was a suit for declaratory judgment brought by John Ben Shepperd, Attorney General of Texas, to determine the beneficiaries of a charitable trust created by William Buchanan, with prayer for injunctive relief. The defendants were The William Buchanan Foundation and its Trustees; the Board of Regents of the University of Texas and the members thereof; the Board of Trustees of the

The Foundation was created on October 9, 1923, when William Buchanan executed a deed of trust placing the sum of one million dollars in cash and Government bonds in the hands of designated trustees to be expended for certain charitable purposes. The Trustees, under authority of the instrument, in 1930 secured a charter for a charitable corporation named The William Buchanan Foundation. The assets of the Foundation at the time of the trial were in excess of $2,600,000.

The pertinent provisions of the trust instrument in question are as follows:

"The purpose of this conveyance and delivery of the Trust Fund is to create and endow a charitable enterprise, to be known as 'The William Buchanan Foundation' in the City of Texarkana, Texas, under which name and title its activities shall be carried on in the manner and for the use and purposes following, to-wit:

"1. The Trust Fund and the income therefrom shall be held, used and expended by said Trustees and their successors in this Trust for charitable purposes and for the alleviation of suffering and distress, and to that end the Trust Fund may be used for the establishment and maintenance of charitable and benevolent activities, agencies and institutions and for the aid of such activities, agencies and institutions already established, or expended through such other means or agencies which, from time to time, shall seem expedient to the Trustees in this Trust. The Trust Fund and the income therefrom shall be administered in Bowie County, Texas, but for the benefit not only of the citizens or residents of said county, but also for the benefit of the citizens or residents of adjoining counties, as well as for the benefit of such other persons as in the judgment of the Trustees should receive the benefits of the activities or institutions established hereunder.

"2. Without in any way limiting the power of the Trustees with respect to any of the activities mentioned in the preceding paragraph, I suggest that the Trust Fund be employed, for the most part, in some concentrated charitable enterprise of broad usefulness, such as the establishment and maintenance of a children's hospital and clinic or some other charitable institution or institutions of a kindred nature, leaving said Trustees, however, free to use the Trust Fund for any of the other purposes mentioned in the preceding paragraph if, in their judgment, it becomes wise or advisable not to use the Trust Fund for the purposes mentioned in this paragraph.

"3. The Trustees shall have power to sell, transfer and convey the Trust Fund, or any part thereof, and to invest and reinvest the principal or income therefrom, and to deal with and expend the income and principal of the Trust Fund as in the judgment of the Trustees will best promote the object and purposes of this Trust. * * *

"4. * * * Said Trustees shall also have the power and authority to appoint agents * * *

"5. The trustees and their successors shall have power and authority to organize a corporation if in their judgment it becomes advisable to do so to carry out the purposes of this Trust. * * *

"6. * * * All Trustees hereafter elected shall be persons of high intelligence, of good moral character, interested in the purposes for which this Trust is created, and in a position to enter actively upon the duties of said Trustees, as herein contemplated. * * * All questions arising hereunder shall be decided by a majority vote of the whole Board of Directors.

"7. No Trustee shall be liable personally for anything done hereunder,

acts or omissions involving dishonesty or moral turpitude excepted. * * *

"8. In creating this Trust it has been my aim to establish a Foundation on a basis of such financial soundness, under such competent and conservative management and with the prospect of such great usefulness, that other charitably inclined persons may be led to contribute to its endowment and thus take part in promoting its objects and benefits to humanity. The privilege of participating in this undertaking is therefore extended to any one desiring to lend a helping hand in enlarging its scope and usefulness."

The trial court filed the following findings of fact and conclusions of law:

"Findings of Fact

"1. The William Buchanan Foundation is a private corporation duly organized and existing under the laws of the State of Texas, having its domicile and principal place of business in Bowie County, Texas.

"2. Mrs. Helen B. Seeger, James G. Boyce, John W. O'Boyle, Mrs. Mary Seeger O'Boyle, Mrs. Hannah Seeger Davis, James D. Heldt, Stanley J. Seeger, Jr., F. S. Carroll, Mrs. Emiline Grim Fuller, Mrs. Olivia S. Moore, and William G. Fuller are the duly elected, qualified and acting Trustees of The William Buchanan Foundation.

"3. The Board of Trustees of The University of Arkansas, the State of Arkansas and Francis Cherry, Governor of the State of Arkansas and Tom Gentry, Attorney General of the State of Arkansas, were duly served with non-resident notice pursuant to Rule 108, Texas Rules of Civil Procedure, but failed to appear.

"4. William Buchanan executed the trust instrument creating The William Buchanan Foundation on the 9th day of October, 1923.

"5. Under the trust instrument dated October 9, 1923, William Buchanan granted, conveyed and assigned and set over unto certain named trustees and their successors in the Trust to have and to hold forever Four Hundred Thousand Dollars ($400,000.00) in cash and United States Three and One-half Per Cent (3½%) bonds of the face value of Six Hundred Thousand Dollars ($600,000.00).

"6. The charter of The William Buchanan Foundation was executed on February 1, 1930, and filed on February 6, 1930.

"7. The corpus of the Trust Fund now amounts to in excess of $2,600,-000.00.

"8. William Buchanan came to Texarkana in the early 1870's and lived in Texarkana until he died on October 26, 1923.

"9. William Buchanan controlled a lumber office in Texarkana and maintained offices in the State National Bank Building in Texarkana.

"10. William Buchanan controlled the Louisiana and Arkansas Railroad with general offices in Texarkana, Texas.

"11. William Buchanan ran all of his business interests from Texarkana with occasional meetings and business trips to the specific locales of his various business interests.

"12. William Buchanan took an active interest in the affairs of Texarkana and of the Texarkana area and was a regular contributor to the charitable drives within the area.

"13. William Buchanan made substantial contributions to the Pine Street Presbyterian Church in Texarkana, Texas.

"14. William Buchanan was concerned about the welfare of the individual citizens who were residents of

Bowie County, Texas, and of the adjoining counties.

"15. William Buchanan was concerned about the lack of adequate medical care for the residents of Bowie County, Texas, and of the adjoining counties.

"16. William Buchanan took great pride in the growth and development of Texarkana.

"17. At the time William Buchanan executed the trust instrument creating The William Buchanan Foundation, there was widespread publicity in the Texarkana area about William Buchanan's charitable gift.

"18. The public reaction of the citizenry of Bowie County, Texas, and of the adjoining counties was that William Buchanan was their great benefactor and had done a wonderful thing for the community in which he had lived most of his life. Shortly after William Buchanan executed the trust instrument, the Texarkana Rotary Club passed a resolution commending him and referred to the 'million dollar charity fund to be dispensed here in our midst.' Mr. Buchanan knew of this public reaction and would not have accepted such gratitude and acclaim had he not intended to benefit the residents of the Texarkana area.

"19. William Buchanan was present at three meetings of the Trustees of The William Buchanan Foundation prior to his death.

"20. William Buchanan was the first President of The William Buchanan Foundation.

"21. All of the original trustees of The William Buchanan Foundation, except Mr. Buchanan's daughter Helen B. Seeger, and her husband, Stanley J. Seeger, were residents of Texarkana.

"22. At the first meeting of The Foundation, October 9, 1923, a committee was appointed to draft by-laws for The Foundation; and the by-laws which were drafted and adopted at the second meeting of The Foundation, October 17, 1923, contained a provision (Section 5 of Article 1) requiring the trustees of The Foundation, excepting original trustees and descendants of William Buchanan and their families, to be residents of Bowie County.

"23. William Buchanan died October 26, 1923.

"24. The original trustees of The William Buchanan Foundation at the fifth meeting of The Foundation, November 7, 1923, employed Dr. Stanley J. Seeger, one of the original trustees, to make an initial survey to determine the charitable needs of Bowie County, Texas, and of adjoining counties, with explicit instructions to explore the recommendations made by the Executive Committee of The Foundation at the fourth meeting of The Foundation, November 6, 1923, among which recommendations was the following, to-wit:

" 'For the purpose of initiating the activities of The William Buchanan Foundation the Executive Committee recommends the employment of a competent man, preferably a physician, to do the following:

" 'First: To make a careful study of the health conditions in this territory, especially in the case of children; and to secure all available information on this subject from Government and State Boards and other institutions and agencies which have made surveys of this section.

*    *    *    *    *    *

" 'Seventh: Secure any other information that would be helpful to the Trustees in determining upon the best plans and methods for carrying into effect the provisions and purposes of the Buchanan Foundation in establishing a Children's Hospital and Clinic in Bowie County.'

"25. Dr Seeger's survey report to the original trustees, dated February 7, 1924, shows that he was in fact investigating and concerned solely with health conditions in the Texarkana area.

"26. In 1926, The Foundation was granted the status of a tax-exempt charitable foundation by the United States Treasury Department as a result of hearings before said Department in which The Foundation convinced said Department that it was a 'community' foundation dedicated to serving the community of Texarkana, Texas; and hence came within the requirements of the Revenue Acts of 1921 and 1924 for such exempt status.

"27. When he executed the trust instrument dated October 9, 1923, William Buchanan intended the residents of Bowie County, Texas, and of the adjoining counties, to be the primary beneficiaries of The William Buchanan Foundation.

"28. When he executed the trust instrument dated October 9, 1923, William Buchanan intended that the charitable enterprise created thereby be administered, managed, conducted, controlled and carried out in Bowie County, Texas, for the benefit of the residents of Bowie County, Texas, and of the counties adjoining thereto.

"29. William Buchanan intended that the Trustees of The Foundation have discretion only as to the type of charitable undertaking to be established in Texarkana, Texas.

"30. The William Buchanan Foundation has presently outstanding commitments to The University of Arkansas in the sum of Five Hundred Thousand Dollars ($500,000.00) and to The University of Texas in the sum of Thirty-eight Thousand Dollars ($38,000.00).

"31. The commitments to The University of Texas and The University of Arkansas were not made for the benefit of the residents of Bowie County, Texas, and of the adjoining counties.

"32. The shortage of hospital facilities in the Texarkana area is acute, and financial aid is needed in all the fields of charitable endeavor in said area.

"33. I find that during the time from 1923 to the present the Trustees of The William Buchanan Foundation have contributed from the funds of said Foundation the sum of approximately Twenty-nine Thousand Dollars ($29,000.00) for charitable purposes in Bowie County, Texas, and adjoining counties.

"34. I find that no charitable activities or institutions mentioned in the declaration of trust have been established by the trustees in Bowie County, Texas, although approximately thirty years have elapsed since the creation of the Foundation.

"35. I find that the declaration of trust executed by William Buchanan on the 9th day of October, 1923, contained the following provision: (Note: Here follows the opening paragraph and paragraphs 1 and 2 of the Trust instrument heretofore set out.)

"36. That the Trustees of the Buchanan Foundation have no intention of establishing at this time any charitable agencies, activities, or institutions in Bowie County, Texas.

"Conclusions of Law.

"From the foregoing findings of fact, I conclude as a matter of law:

"1. That this Court has jurisdiction of all the parties named in plaintiff's petition to adjudicate all the matters raised by the pleadings in this case.

"2. That the trust instrument executed by William Buchanan on the 9th day of October, 1923, should be so

construed as to give effect to all its provisions.

"3. That so construing said instrument, it is entirely clear that it was the intention of William Buchanan that The William Buchanan Foundation should always be domiciled in Texarkana, Texas.

"4. That the Trustees should with all reasonable diligence and dispatch institute, establish and maintain such charitable and benevolent activities, agencies and institutions or provide for the aid of such activities, agencies, and institutions already established as would make full use of the Trust Fund for the purposes for which it was created.

"5. That it was the intention of William Buchanan that the Trustees should institute and establish agencies, activities, and institutions of broad usefulness but that such Trustees should have a wide discretion as to the kind and character of such agencies, activities, and institutions to be established so long as they were such as would give effect to the purposes of the Trust.

"6. That such trust fund should be administered in Bowie County, Texas, by which he meant that the agencies, activities, and institutions of whatever kind established by such Trustees should be established, maintained, managed, conducted and carried out in Bowie County, Texas.

"7. That such charitable agencies, activities, and institutions of whatever kind or extent so established in Bowie County, Texas, should be for the benefit of the residents and citizens of Bowie County, Texas, and of adjoining counties, as well as for the benefit of such other persons as in the judgment of the Trustees should receive the benefits of the agencies or institutions established under such declaration of trust in Bowie County, Texas.

"8. That such construction gives effect to all the provisions of the declaration of trust with reference to the agencies, activities, and institutions mentioned in such trust instrument and where they should be located and the persons for whose benefit they should be established.

"9. That to permit the Trustees to expend the trust fund for the purposes for which they now propose to spend a large portion of it would enable them to defeat any interest which the only beneficiaries named in the trust have in the fund and enable them to disregard the express provisions of the trust.

"10. I further conclude as a matter of law that the William Buchanan Foundation and the Trustees thereof are not warranted by any provision of the trust instrument to make the commitments outstanding to the University of Arkansas and the University of Texas and that their acts in doing so should be enjoined by this Court.

"11. I further conclude as a matter of law that the Trustees of the William Buchanan Foundation should be directed in the future to comply with the provisions of the declaration of trust establishing the William Buchanan Foundation by instituting and establishing in Bowie County, Texas, all charitable agencies, activities and institutions authorized and required by said trust and to manage, maintain, control and conduct said agencies, activities and institutions so established in Bowie County, Texas, for the benefit of the citizens and residents of Bowie County and adjoining counties and for the benefit of such other persons as in the judgment of the trustees should receive the benefit of the agencies, activities and institutions so established."

Appellants by their 1st, 2nd and 3rd points contend (in essence) that the trial court erred (1) in holding that under the trust instrument the primary beneficiaries of the trust are the residents of Bowie County, Texas, and adjoining counties and that the charitable enterprises, activities

and institutions receiving funds from the trust must be administered, managed and controlled in Bowie County, Texas, for the benefit of the residents of that county and adjoining counties and for the benefit of such other persons as in the judgment of the Trustees should receive the benefits of such enterprises, activities and institutions; (2) in holding that the Foundation violated the provisions of the trust instrument when it committed itself to give $500,000 to the University of Arkansas and $38,000 to the University of Texas; and that the trial court erred (3) in enjoining the Foundation from fulfilling said commitments to the University of Arkansas and to the University of Texas.

Appellee by his first, second and third counterpoints contends that the trust instrument is plain and unambiguous, that the trial court construed it correctly and did not err in holding that the commitments to the University of Arkansas and to the University of Texas were in violation of the trust instrument, and that the trial court did not err in enjoining the fulfilling of such commitments.

Appellants by their fourth point (in essence) contend in the alternative that if the trust instrument does not plainly give the Trustees the discretion to determine where the trust funds shall be spent, that the instrument is ambiguous in this respect, and that the trial court erred in not placing upon the instrument the construction consistently placed upon it by the Board of Trustees, the interpretation that the Trustees have been given discretion as to where the trust funds shall be spent. Appellee by his fourth counterpoint contends alternatively that if the trust instrument is not plain and unambiguous in its designation of the primary beneficiaries of the trust as being the residents of Bowie County and of the adjoining counties, the trial court did not err in so construing the trust instrument.

We quote the following statements and arguments from appellants' brief:

"1. The trust instrument does not require the trustees to use the trust funds for the benefit of charities located within the geographical limits of Bowie County.

*"The Foundation and its trustees contend that under the unambiguous terms of the deed of trust the trustees have the discretion to determine how, when and where the trust funds shall be spent and who the beneficiaries shall be.*

"It is elementary that a written instrument should be interpreted from its four corners, that is, as a whole. Missouri, K. & T. R. Co. of Texas v. Carter, 95 Tex. 461, 68 S.W. 159; Pennington v. Bevering, Tex.Com.App., 17 S.W.2d 772; Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273. When the deed of trust here involved is so interpreted, it will be found that the dominant purpose of William Buchanan was to devote one million dollars to charity and to give his trustees broad discretion in determining when, where and how the trust funds should be spent." * * * (P. 13, Appellants' brief—emphasis added.)

"2. The requirement that the trust 'shall be administered in Bowie County, merely requires that the trust be managed there; such language does not require that the trust funds be spent in that county.

"As shown above, there is nothing in the trust instrument even squinting at the requirement that all trust funds be given to charitable enterprises, activities and institutions physically situated within the confines of Bowie County. In fact, all the provisions of the instrument indicate the contrary, unless appellee is correct in his contention that the trust funds must be so spent because the trust 'shall be administered in Bowie County.'

*"It is the appellants' contention that the language relied upon by appellee requires merely that Bowie County shall be the 'place of administration' or*

the 'seat of the trust.' To give such language the meaning placed upon it by appellee is to deny to it the sense in which it is customarily used in the law of trusts." (Appellants' brief, p. 18, emphasis added.)

■ The cardinal principle to be observed in construing a trust instrument is to ascertain the settlor's intent with the view of effectuating it. 42 Tex.Jur. 621–622, Trusts, Sec. 19; Parrish v. Mills, 101 Tex. 276, 106 S.W. 882; 65 C.J. 497–498, Trusts, Sec. 241; 90 C.J.S., Trusts, § 162.

■ Also it is the intention of the settlor at the time of the creation of the trust that is determinative. Restatement, Trusts, 16, 17, Sec. 4.

■ The rules of construction for deeds, wills and other instruments are also applicable for the construction of trust instruments. 42 Tex.Jur., 621–622, Trusts, Sec. 19. In Pugh v. Mays, 60 Tex. 191, 192, it is stated: "The general rule for construing deeds is that announced in Hancock v. Butler, 21 Tex. 804, as elementary, and applicable alike to written instruments generally, and that is, every part of a deed should be harmonized and given effect to, if this can be done; but if it is found that there is in the instrument inherent conflict of intention, *then the main intention, the object of the grant being considered, shall have controlling influence.*" (Emphasis added.)

■ It is elementary that if a written instrument is unambiguous the construction of it is for the court to determine from the terms of the instrument itself.

■ Parol or extrinsic evidence may be admitted to aid in construing a trust instrument only if the instrument is ambiguous or uncertain, and only to explain and not to contradict, the instrument, but also on the other hand, in case of doubt or ambiguity, parol, extraneous, or extrinsic evidence may be considered in order to ascertain the settlor's intention, and may be proper in order to illuminate the circumstances surrounding the execution of the instrument and the settlor's conception or understanding of any ambiguous words employed by him therein. 90 C.J.S., Trusts, § 165 a. Also where the trust instrument is indefinite, ambiguous, uncertain or inconsistent, the court can, or must, consider the surrounding circumstances in determining just what the intention of the donor was, or the meaning of the instrument. 90 C.J.S., Trusts, § 165 b.

Mr. Buchanan stated his purpose in creating the trust immediately following the habendum clause, as follows: "to create and endow a *charitable enterprise * * * in the city of Texarkana, Texas.*" (Emphasis added.)

The word "enterprise" is defined in Webster's New International Dictionary, 2nd Edition, as follows:

"1. An attempt or project, esp. one which involves activity, courage, energy, or the like; a bold, arduous, or hazardous attempt; an important undertaking; as a warlike enterprise.

"2. Initiative disposing one to engage in what requires boldness, energy, or the like; as a man of enterprise.

"3. Management. Rare.

"Syn.—Undertaking, venture, essay, attempt * * *."

Also see 30 C.J.S., Enterprise, p. 260, for a collection of cases recognizing as "enterprises" "something projected and attempted, an arduous or hazardous attempt, as a warlike enterprise, particularly an undertaking of some importance or one requiring boldness, energy or perseverance; or simply a project or undertaking; an arduous attempt, or an undertaking of hazard. Among the cases cited is Hahnemann Hospital v. Industrial Board of Illinois, 282 Ill. 316, 118 N.E. 767, 770, which holds that a hospital for the care of the sick and injured was an "enterprise."

In paragraph 1 of the trust instrument, after directing that the trust fund and the income thereof should be used for charita-

ble purposes through the establishment of such activities, agencies and institutions as the Trustees deem best, Mr. Buchanan placed the following limitation therein, to-wit:

"*The Trust Fund and the income therefrom shall be administered in Bowie County, Texas, but for the benefit not only of the citizens or residents of said county, but also for the benefit of the citizens or residents of adjoining counties, as well as for the benefit of such other persons as in the judgment of the Trustees should receive the benefits of the activities or institutions established hereunder.*" (Emphasis added.)

In 2 C.J.S., Administer, p. 53, it is stated that the word "administer" has not a strict legal or technical import but is a word in general use, with a commonly accepted meaning. Webster's New International Dictionary, 2nd Ed., gives as synonyms for the word "administer" the words "manage", "conduct", "give out," "distribute", and "furnish".

In American Trust & Banking Co. v. Hedges, 16 Tenn.App. 348, 64 S.W.2d 527, (certiorari denied Tenn.Sup.Ct.), the court held, under a will providing that certain income should be held and "administered" by trustees for the use and benefit of grandchildren, that the word "administer" should be given its common meaning, unless the contrary intention appeared, and that in its ordinary meaning the word meant to furnish; to give; to dispense; to give, supply or dispense; to direct or cause to be taken; to supply, to furnish or to provide with; and that the chancellor properly directed that the trustees *expend* such income for the benefit of the grandchildren where a present necessity existed, even though the will also prohibited payment of the accumulated income to the grandchildren until they respectively became 21 years of age.

■ It is our opinion that the trust instrument is plain and unambiguous. Construing the trust instrument from its four corners it is our view that the dominant intention of Mr. Buchanan was that the Foundation was to be domiciled in Texarkana, Texas, and that charitable enterprises, activities and institutions should be established in Bowie County, Texas, so as to give full effect to the purpose of the trust and that such charitable enterprises, activities and institutions must be administered, managed, controlled and conducted in Bowie County, Texas, for the primary benefit of the residents of Bowie County, Texas, and of the residents of counties adjoining thereto, and also (but not primarily) for the benefit of such other persons as in the judgment of the Trustees should receive the benefit of the activities or institutions so established, as found by the trial court. We thoroughly concur with the trial court's construction of the trust instrument.

■ It is our further view that if the trust instrument is ambiguous, then in such event the evidence in this case amply supports the construction given to the instrument by the trial court. The record clearly discloses that William Buchanan greatly loved Texarkana where he likewise was loved, respected and recognized as Texarkana's greatest benefactor, that he was greatly interested in the health of children, and especially poor children, in Texarkana and in Bowie County and adjoining counties, and that he was particularly concerned with doing something definitely beneficial for the residents of and for the particular area above named that he so dearly loved. There was testimony from Mr. J. K. Wadley, a close friend of Mr. Buchanan, to the effect that Mr. Buchanan told him (about a week prior to Mr. Buchanan's death) that "he (Mr. Buchanan) had created a trust for the poor of Bowie County and surrounding territory." There was testimony from Mr. Wood that Mr. Buchanan stated in effect that he had planned to do "something nice for Texarkana", and that he could not spend all his money "frittering it away in small amounts or I will not have anything left *to carry out my idea for something nice for Texarkana.*" The original Trustees named by Mr. Buchanan in the trust instrument were all residents of Texarkana with the exception of his daughter, Mrs.

Helen Buchanan Seeger and her husband, Dr. Stanley J. Seeger. Mr. William Buchanan was elected as the first president of the Foundation and voted for the by-law that required (that except for members of the then present Board of Trustees and descendants of William Buchanan and family) that Trustees thereafter elected should be residents of Bowie County, Texas, which by-law was not changed until some time after the death of Mr. Buchanan. There was also testimony from Judge A. L. Burford, an eminent Texarkana attorney, a close friend of Mr. Buchanan and one of the original Trustees, with respect to the circumstances surrounding the granting by the U. S. Treasury Department of a tax-exempt status to the Foundation as a "community foundation dedicated to serving the community of Texarkana, Texas", and Judge Burford also testified to other matters with reference to the life and activities of Mr. Buchanan. There was also other testimony unnecessary to detail here but which taken with the evidence above referred to, the fact findings of the trial court, and the entire record in this case, clearly discloses Mr. Buchanan's dominant desire and intention to do something primarily beneficial for the area and for the residents of the area that he so dearly loved, in the manner as construed by the trial court. As above stated, we think the trial court's construction of the trust instrument is correct without the necessity of considering parol evidence. If the trust instrument is ambiguous, then the parol evidence in this case clearly fortifies and illuminates the construction given to the trust instrument by the trial court.

We believe that Mr. Buchanan intended the word "administer" to be given its usual and ordinary meaning since no contrary intention is found in the trust instrument. We agree that Mr. Buchanan intended Texarkana, Texas, to be the domicile or seat of the trust but we do not agree that Mr. Buchanan intended by the trust instrument to make Texarkana, Texas, or Bowie County, Texas, *merely* the "seat of the trust" *alone,* as contended by appellants. We think Mr. Buchanan clearly intended that Texarkana, Texas, and Bowie County, Texas, would certainly be much more than merely a meeting place for the Trustees and administrative office and bookkeeping place for the Foundation.

It is our further opinion that Mr. Buchanan did not intend by the trust instrument to establish a universal charity giving to the Trustees unlimited discretion to expend the trust funds anywhere for any purpose.

■ The $500,000 commitment to the University of Arkansas was to be used in a teaching hospital with respect to children's diseases in the University Medical Center at Little Rock, Arkansas. The $38,000 commitment to the University of Texas was to be used in research for the study of tuberculosis and related diseases in children at the Southwestern Medical School in Dallas, Texas, a branch of the Medical School of the University of Texas. Unquestionably these two commitments were for worthy purposes; however, they were made to institutions outside of Bowie County, Texas, and would be administered outside of Bowie County, Texas, and are in places several counties removed from Bowie County, Texas. These commitments were not made for the primary or specific benefit of the residents of Bowie County, Texas, and of adjoining counties. Any benefits which the residents of Bowie County, Texas, and of adjoining counties, might receive therefrom would be no different from the benefits that such purposes would probably give to the residents of the States of Texas and Arkansas, and perhaps in varying degrees to the South, the Nation and perhaps to the world itself. We hold that the trial court correctly and properly enjoined the fulfillment of the commitments in question.

Appellants' 1st, 2nd and 3rd points have been carefully considered and are respectfully overruled.

■ Appellants' 4th point is also overruled. The evidence discloses that the Board of Trustees has not consistently construed the trust instrument. No sizeable

gift was made until after 1943, and all of the grants prior to 1943, with one possible exception, were clearly made for the benefit of residents of Bowie County, Texas, and adjoining counties. Also no length of diversion from the plain provisions of a charitable trust will prevent restoration to its true purpose. Trustees of Andover Theological Seminary v. Visitors of Theological Institution in Phillips Academy in Andover, 253 Mass. 256, 148 N.E. 900, 918.

Appellants by their 13th and 14th points question the jurisdiction of the trial court but cite no authorities in support of these points. These points are deemed to be without merit, and are respectfully overruled.

Appellants' remaining points and reply points have also been carefully considered and are respectfully overruled.

As above stated, we think the trust instrument was not ambiguous and that the trial court construed it correctly. If the instrument was ambiguous, the trial court, being the trier of the facts in this case, will be presumed to have not been influenced by any improper evidence in the case, if there was any, there having been ample competent evidence to support the judgment of the trial court. Bates v. Stinnett, Tex. Civ.App., 170 S.W.2d 644; Wilcox v. Dillard, Tex.Civ.App., 35 S.W.2d 507, error ref. Clearly there was ample competent testimony of probative force to support all phases of the judgment of the trial court. We also agree with all of the conclusions of law of the trial court.

We also specifically hold that the trial court properly and correctly enjoined the Foundation, its Trustees, agents, servants, and employees or other persons under the Foundation's direction and control, from conducting the Foundation's charitable enterprises outside of Bowie County, Texas, and from expending the charitable trust funds other than for the benefit of the residents of Bowie County, Texas, and of adjoining counties and for the benefit of such other persons as in the judgment of the Trustees should receive the benefit of the activities and institutions so established. We also approve the portion of the judgment of the trial court which directed the Trustees of the Foundation to comply in the future with the directions of the trust instrument as stated in the judgment.

We conclude and hold that the judgment rendered by the trial court in this cause is in all respects correct.

The judgment of the trial court is affirmed.

Affirmed.