

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
ston, TX. 77002-3111
, ./223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

August 7, 1986

Mr. William N. Kirby
Commissioner of Education
Texas Education Agency
1701 N. Congress Avenue
Austin, Texas   78701

Opinion No.   JM-529

Re: Applicability of the Texas Proprietary School Act to certain enterprises

Dear Mr. Kirby:

You have asked several questions about the interpretation of the Texas Proprietary School Act. Educ. Code §§32.01-32.81. We will answer only the specific questions asked. We note that some provisions of the act may raise constitutional questions of vagueness or improper delegation. We do not address those questions.

Under the Proprietary School Act your agency is responsible for issuing certificates of approval to proprietary schools. Several of your questions have to do with the definition of "proprietary school." In particular you are concerned about the status of organizations that teach courses for avocational purposes.

The act defines "proprietary school" as follows:

> 'Proprietary School,' referred to as 'school,' means any business enterprise operated for a profit, or on a nonprofit basis, which maintains a place of business within the State of Texas, or solicits business within the State of Texas, and which is not specifically exempted by the provisions of this Chapter and;
>
> (A) which offers or maintains a course or courses of instruction or study; or
>
> (B) at which place of business such a course or courses of instruction or study is available through classroom instruction or by correspondence, or both, to a person or persons for the purpose of training or preparing the person for a field of endeavor in a business, trade, technical, or industrial occupation, <u>or for avocational or</u>

> personal improvement, except as hereinafter excluded. (Emphasis added).

Educ. Code §32.11(1). Thus, the definition of "proprietary school" expressly includes an organization that teaches courses for the purpose of "avocational or personal improvement." However, the act specifically exempts from the definition of "proprietary school"

> a school or training program which offers instruction of purely avocational or recreational subjects as determined by the administrator. . . .

Educ. Code §32.12(a)(3)..

Although there are slight differences in wording, the exemption in section 32.12(a)(3) appears to negate the specific inclusion in the definition of "proprietary school" of courses taught for purposes of "avocational or personal improvement." Statutes apparently in conflict should be given the most reasonable construction that can be placed on them consistent with the intent of the legislature. State v. Jackson, 370 S.W.2d 797, 800 (Tex. Civ. App. - Houston 1963) aff'd, 376 S.W.2d 341 (Tex. 1964)

A committee report to the Sixty-second Legislature and a law review article both show that the concerns that gave rise to the Proprietary School Act were focused on regulation of vocational education in Texas. The Report of the Senate Committee on Vocational-Technical Education to the 62nd Leg., January 1971; Comment, The Proprietary Vocational School: The Need for Regulation in Texas, 49 Tex. L. Rev. 69 (1970). Also, the act exempts schools that teach subjects that are "purely" avocational or recreational. Subjects are not inherently avocational or recreational. Rather, a subject such as cooking may be vocational or avocational depending on a particular person's relationship to the subject. We assume that the legislature intended to exempt schools that teach subjects that are avocational or recreational for most people and that do not claim to be offering vocational training. Therefore, we conclude that the most reasonable reading of section 32.11(1) together with section 32.12(a)(3) is that a school that teaches courses primarily for vocational training is a proprietary school, even if the purpose of some of its courses is merely "avocational or personal improvement." On the other hand, if a school teaches subject matter that is primarily considered to be recreational or avocational and if it does not hold itself out to be offering vocational training, then it is exempted from the provisions of the Proprietary School Act under section 32.12(a)(3). The legislature left it to the discretion of the commissioner of education to determine which subjects are primarily avocational or recreational. Educ. Code §32.12(a)(3).

The preceding discussion of the status of "avocational" courses guides us in our responses to two of your questions. The first of those questions is:

How does the term 'purely avocational' differ from the term 'recreational?'

We do not think that the act requires you to distinguish between courses that are avocational and courses that are recreational. Rather, as we explained above, we think that the entire phrase "purely avocational or recreational" should be read to exempt from the provisions of the Proprietary School Act organizations that do not claim to be offering vocational training and that teach subjects that are generally considered to be for non-vocational purposes.

Your second question is:

How would courses which you deem to be purely avocational differ from a standard business or professional course?

The legislature left it to the discretion of the commissioner of education to determine what types of courses would be exempt under section 32.12(a)(3). Since many subjects can be taught for either vocational or avocational purposes, we think that the act permits the commissioner to examine the claims or advertising of an organization to determine whether a particular subject is offered for vocational or avocational purposes.

Your third question is:

Does the Texas Proprietary School Act apply to private enterprises (regardless of whether they are profit or nonprofit) which offer courses of instruction in the use of products they market when the products in question have applications which are not exclusively recreational or purely avocational?

You explain that you are particularly concerned about courses taught by businesses that sell computers. You note in your letter that there is no exemption in the act for businesses that instruct buyers in the use of products. We do think, however, that it would be within the discretion of the commissioner to conclude that certain types of assistance in helping customers learn how to use a product are not "courses of instruction or study" for purposes of the Proprietary School Act and therefore not within the act.

Also, even if a computer company does offer "courses of instruction or study," it is the nature of the courses offered and not the nature of the product that determines whether courses are exempt under section 32.12(a)(3). Some courses offered by such businesses deal with uses for a computer that are primarily for personal use, rather than business use. Other courses are probably taught for primarily business or vocational purposes. It is within the discretion of the commissioner to determine which courses fall into which category.

Your fourth question is:

> Pursuant to section 32.12 (courses sponsored by an employer) at which point must the employer absorb any tuition costs for this exception to apply? If the employer reimburses the student for all tuition charges upon successful completion of the course (as an incentive to the student to complete the same) does the exception apply?

Section 32.12(a)(4) exempts from the provisions of the Proprietary School Act

> a course or courses of instruction or study sponsored by an employer for the training and preparation of its own employees, and for which no tuition fee is charged to the student. . . .

You ask whether the employer must absorb any tuition costs in order for this exemption to apply. The exemption requires that no fee be charged to the student and that the course be "sponsored by" the employer. A "sponsor" has been defined as "a person or an organization that pays for or plans and carries out a project or activity." Webster's Ninth New Collegiate Dictionary (1984). Conceivably, then, an employer could "sponsor" a course by organizing it even if it were paid for by a third party. Whether a particular course is "sponsored by" an employer is a question of fact that depends on the circumstances of a particular case.

You also ask whether the exemption for courses sponsored by an employer is applicable if the students initially pay a tuition charge and are subsequently reimbursed by the employer. We do not think that the requirement of section 32.12(a)(4) that no fee be charged to students necessarily forecloses such an arrangement. Your question indicates, however, that you contemplate a situation in which a student would not be reimbursed if he did not successfully complete the course. We do not think that the section 32.12(a)(4) exemption would apply under those circumstances.

Your fifth question is:

> Must each center (or store) where training is offered be considered a separate school?

A "proprietary school" is a "business enterprise . . . which maintains a place of business . . . or solicits business [in Texas]." Educ. Code §32.11(1). The word "enterprise" suggests an activity, project, or undertaking. See William Buchanan Foundation v. Shepperd, 283 S.W.2d 325 (Tex. Civ. App. - Texarkana 1955, no writ). Nothing in the term "business enterprise" limits the meaning to one place. We think that the phrase "maintains a place of business . . . or solicits business" in section 32.11(1) merely sets a minimum on what activity an enterprise must be engaged in to come within the Proprietary School Act. It does not mean that each separate place of business is a separate enterprise. A single proprietary school may maintain more than one place of business. Of course, each separate place of business maintained by a proprietary school must comply with the requirements of the Proprietary School Act. See Educ. Code §32.33. What constitutes a "business enterprise" will depend on the facts of a particular case. See Attorney General Opinion H-313 (1974) (discussion of term "business entity").

Your sixth question is:

> Must sales clerks in computer stores who take customer orders for one or more courses be considered representatives as defined in section 32.11(4), thus requiring them to obtain representative permits?

All representatives employed by a proprietary school must register with the commissioner of education. Educ. Code §32.37. Section 32.11(4) defines "representative" as

> a person employed by the school as defined herein, whether the school is located within or without the State of Texas, to act as an agent, solicitor, broker, or independent contractor to directly procure students or enrollees for the school by solicitation within or without this State at any place.

That definition contemplates active recruiting of students. Therefore, the fact that someone accepts an application or enrollment form for a course is not by itself enough to make that person a "representative."

S U M M A R Y

Schools that teach courses in subjects that are generally considered to be for recreational or avocational purposes and that do not claim to be offering vocational training are exempt from the provisions of the Proprietary School Act. Educ. Code §§32.11-32.31. It is within the discretion of the commissioner of education to determine whether certain types of assistance offered to help customers learn to use a product are "courses of instruction or study" for purposes of the Proprietary School Act.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General