(No. 11595.—Appellate Court reversed; circuit court affirmed.)

THE HAHNEMANN HOSPITAL, Appellee, *vs.* THE INDUS-
TRIAL BOARD OF ILLINOIS *et al.*—(MARGARET M. DEL-
SCAMP, Appellant.)

*Opinion filed February 20, 1918.*

1. APPEALS AND ERRORS—*when the court will review evidence in
record certified by common law writ of certiorari.* Ordinarily the
question of sufficiency of the evidence before an inferior tribunal
will not be reviewed by the higher court on a common law writ of
*certiorari* because the return to the writ contains nothing but the
record, properly so called, but where the question is whether juris-
dictional facts were or were not proved the record must show facts
giving the inferior tribunal jurisdiction, and this evidence may
properly be reviewed by the higher court.

2. WORKMEN'S COMPENSATION—*Industrial Board cannot apply
Workmen's Compensation act to persons not subject to its provi-
sions.* The Industrial Board has no jurisdiction to apply the Work-
men's Compensation act to persons or corporations who are not
subject to its provisions nor to an accident not within the provi-
sions of the act, and where the questions in the Supreme Court are
whether the injured employee was engaged in an extra-hazardous
occupation and whether the injury arose out of and in the course
of the employment, the evidence certified in the record on a com-
mon law writ of *certiorari* may properly be reviewed by said court
to determine such jurisdictional questions.

3. SAME—*conducting hospital in building subject to municipal
regulation for protection of the public is an extra-hazardous occu-
pation.* Under the second paragraph of section 4 of the Work-
men's Compensation act of 1913 a hospital is included in the term
"employer," and under clause 8 of paragraph (*b*) of section 3 of
said act the conducting of a hospital in a seven-story building so
equipped that it is subject to municipal ordinance regulations "for
the protection and safeguarding of the employees or the public
therein" is an extra-hazardous enterprise within the act.

4. SAME—*when a business is extra-hazardous within the mean-
ing of the act of 1913.* The Workmen's Compensation act of 1913
does not undertake to specifically define or describe every business
that it classifies as extra-hazardous, but it is the intention of the
act that no business shall be held to be extra-hazardous unless it
is, in fact, extra-hazardous *per se,* or is rendered extra-hazardous
when conducted under the conditions and surroundings named in
the statute.

5. SAME—*extent to which intoxication is a bar to recovery under the Workmen's Compensation act.* Before drunkenness can be said to bar a recovery under the Workmen's Compensation act the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment, but intoxication which does not incapacitate the employee from following his occupation will not defeat recovery although it may be a contributing cause of the injury.

6. SAME—*test for determining whether an employee is so intoxicated that he cannot be said to be engaged in his employment.* Whenever an employee is so intoxicated and helpless that he can no longer follow his employment he cannot be said to be engaged therein, and when injured while in that condition his injury does not arise out of his employment.

7. SAME—*contributory negligence cannot bar a recovery when injury arises out of and in the course of employment.* Under the Workmen's Compensation act contributory negligence of the employee, or a defense of that nature, cannot bar a recovery where the injury arises out of and in the course of the employment.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. WILLIAM VANDERVANTER, Judge, presiding.

M. D. DOLAN, for appellant.

ASHCRAFT & ASHCRAFT, (E. M. ASHCRAFT, and CHAS. F. RATHBUN, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This appeal is prosecuted on a certificate of importance granted by the Appellate Court for the First District. That court reversed a judgment of the circuit court of Cook county quashing a common law writ of *certiorari* to review the record of the proceedings of the Industrial Board awarding compensation to appellant, Margaret M. Delscamp, on account of the death of William H. Delscamp, her husband, who died as a result of injuries received while employed at appellee's hospital on December 16, 1913.

Only two questions are presented for the consideration of this court: (1) Was appellee, at the time of the accident in question, engaged in an extra-hazardous occupation, and thereby conclusively presumed to have elected to provide and pay compensation under the Workmen's Compensation act of 1913, in force at the time of the accident; and (2) did the injury and resultant death arise out of and in the course of the employment.

The only office which the common law writ of *certiorari* performs is to certify the record of a proceeding from an inferior to a superior tribunal. The superior tribunal, upon an inspection of the record, alone, when the return is sufficient, determines whether the inferior tribunal had jurisdiction of the parties and of the subject matter, and whether it has exceeded its jurisdiction, or has otherwise proceeded in violation of law. (*Highway Comrs.* v. *Supervisors of Carthage,* 27 Ill. 140.) The record must show facts giving the inferior tribunal jurisdiction, and mere conclusions of law are not sufficient. (*Highway Comrs.* v. *Smith,* 217 Ill. 250.) Ordinarily the question of the sufficiency of the evidence before the inferior tribunal will not be reviewed because the return to the writ contains nothing but the record, properly so called. (*Doolittle* v. *Galena and Chicago Union Railroad Co.* 14 Ill. 381; *Chicago and Rock Island Railroad Co.* v. *Fell,* 22 id. 333.) An exception to that rule is made when the question is whether jurisdictional facts were or were not proved. (4 Ency. of Pl. & Pr. 262; 11 Corpus Juris, 205; 5 R. C. L. 265.) The Industrial Board has no jurisdiction to apply the act to persons or corporations who are not subject to its provisions or to an accident not within the provisions of the act. (*Courter* v. *Simpson Construction Co.* 264 Ill. 488.) The record in this case properly contains a stenographic report preserving all the evidence that was considered by the Industrial Board by the positive requirements of paragraph (*e*) of section 19 of the Workmen's Compensation act of 1913, and it was

therefore properly certified by that board as a part of the record. We think it is therefore proper for us to review the record, including the evidence certified, and from the same determine the two jurisdictional questions presented for our consideration in this appeal.

The record evidence discloses appellee is a corporation organized under the general Incorporation act of this State, not as a corporation for pecuniary profit but as a charitable institution, for the purpose of conducting and operating a hospital and for treating the sick and injured. It owned and maintained a building in the city of Chicago which was a seven-story structure equipped with one freight and one passenger elevator, power-driven, in which building the hospital was conducted. The building was also equipped with engines and high-pressure boilers, and a system of electric wiring and apparatus for lighting and signals throughout the building. Stairways were provided leading from the basement to the other floors of the building. Ordinances of the city of Chicago which were in force provided, among other things, that every building more than three stories in height, constructed for or converted to hospital purposes, shall have at least one elevator, enclosed in a fire-proof shaft; that all such buildings shall be equipped with stairway fire-escapes; that inspections of such buildings shall be made by public authorities; that the number and width of stairways in such buildings shall be determined by the area of floor space; that all wires and apparatus used for generating or conducting electricity shall be installed and maintained in compliance with regulations therein provided; and that the boilers and other apparatus used for generating or transmitting steam under pressure for heating or steaming purposes shall be inspected once a year. Appellee had no dynamo in use. The Commonwealth Edison Company furnished electricity for its lighting and signal system and to run its elevators. William H. Delscamp, on the day he was injured was in the employ of appellee as

chief engineer in said building. His duties were to over-
see and supervise a plumber and steam-fitter, an elevator
operator and a janitor, who were all engaged with the de-
ceased in operating, maintaining and caring for the build-
ing and the equipment and machinery contained therein.
There were also employed in the building a superintendent
and nurses. At four o'clock P. M., or a few minutes there-
after, on December 16, 1913, the deceased was found in an
unconscious condition lying on his face on the concrete floor
of the basement, with his feet resting upon the last or the
last two steps of the stairway leading from the basement
to the first floor. His head was resting in a pool of blood.
There was a bruise and an abrasion above one of his eyes.
The base of his skull was fractured and he was suffering
from a concussion of the brain. No one saw him at the
time he received his injury. He was seen for the last time
before his injury by one of the nurses, and also by two par-
ties who were hauling coal to the building, within a very
few minutes before he was found in his injured condition,
who testified that they saw him descending the back stair-
way into the basement. All the circumstances testified to
by the witnesses indicate clearly that he received his injury
by falling down the stairway. It is not disputed by appel-
lee that he received his injury from a fall, its contention
being that he was in an intoxicated condition and received
his injury by reason thereof. It is conceded that his duties
required him to go to all parts of the building. He had a
desk in his office, which was in the basement near the boiler
room, and when not engaged elsewhere his duties required
him to be in his office. His customary and usual way of
reaching the office and boiler room was down the stairway
at the foot of which he was found. The evidence shows
that he traveled that stairway as often as fifteen times a
day. The evidence also shows that the stairway was steep,
entering the basement at an angle of about forty-five de-
grees. Some of the witnesses say that the stairway was

dark, being poorly lighted. None of the evidence shows that the stairway or the basement was well lighted.

The Appellate Court erred in finding that appellee was not engaged, at the time of the accident in question, in an enterprise declared by the statute to be extra-hazardous. Paragraph (b) of section 3 of the Workmen's Compensation act of 1913 enumerates eight classes of occupations, enterprises or businesses as extra-hazardous. Clause 8 of that paragraph enumerates one of the enterprises in the following language: "In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein." The second paragraph of section 4 of the act specifically provides that hospitals and charitable corporations or associations shall be construed to be included in the term "employer." The ordinance regulations of Chicago heretofore set forth as applying to buildings of the class to which appellee's building belonged, and to the machinery, equipment and appliances therein and requiring inspection of the same, were unquestionably imposed for the protection and safeguarding of the employees and the public, and bring the business or enterprise in which appellee was engaged within the terms of clause 8 above set forth.

We agree with the proposition argued by appellee that no occupation, business or enterprise may be properly said to come within the classification set forth in section 3 of the Workmen's Compensation act as extra-hazardous unless it is so in fact, and that it is not to be deemed and held extra-hazardous if it cannot truly be said to be extra-hazardous, or even hazardous, to the employees therein engaged, but we do not agree with the proposition that the business, occupation or enterprise must, as such, be extra-hazardous *per se*. It is sufficient if the occupation, business or enterprise be extra-hazardous only when carried on or

conducted under the conditions and surroundings mentioned in the statute. This clearly appears to be the proper construction when the whole of the statute is considered. It sufficiently appears from a consideration of the language used in clause 8, and particularly when considered along with the other seven clauses enumerating occupations, businesses or enterprises belonging to the extra-hazardous class. The mere conducting of a hospital for treating injured and sick persons, as contended by the appellee, is not, of itself, extra-hazardous, yet a hospital is named in the statute as one of the enterprises which may become extra-hazardous when it is conducted in a building of such height and in a city where municipal ordinance regulations are or shall be imposed "for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein." It can not be truly said that conducting a hospital in a populous city like Chicago, in a seven-story building and under ordinance regulations such as are imposed on appellee, cannot be extra-hazardous, although such a business or enterprise would not be extra-hazardous, or even hazardous, if conducted in a one-story building without such regulations and without being surrounded by dangerous machinery, equipment and appliances made serviceable or driven by electricity or some other extraordinarily dangerous agency or power. Said section 3 enumerates several occupations, businesses or enterprises as extra-hazardous. If we apply common and ordinary definitions to the businesses, occupations and enterprises so enumerated, it is evident that there are many such businesses, occupations and enterprises that are not extra-hazardous. In clauses 1, 2 and 3 of paragraph (*b*) of said section such enumeration is made as follows: (1) The building, maintaining, repairing or demolishing of any structure; (2) construction, excavating or electrical work; (3) carriage by land or water and loading and unloading in connection therewith. It is apparent that all such businesses

may or may not be extra-hazardous when so defined. The building, maintaining, repairing, demolishing or construction of a chicken coop or a dog kennel, or the digging of a post hole for a fence post, is evidently not an extra-hazardous occupation and could not be properly classed as such, as was said by this court in *Uphoff* v. *Industrial Board*, 271 Ill. 312. The statute does not undertake to specifically define or specifically describe every business, occupation or enterprise that it classifies as extra-hazardous, but it is clear that no business should be held to be extra-hazardous unless it is, in fact, extra-hazardous *per se,* or is rendered extra-hazardous when conducted under the conditions and surroundings named in the statute.

Under the evidence in this case we think it clearly appears that the hospital of appellee,—*i. e.,* the business or enterprise of conducting a hospital by it in the building, with the machinery, appliances and equipment therein used,—is, in fact, extra-hazardous within the meaning of the statute. Many of its employees are engaged in handling, repairing and operating the dangerous machinery, equipment and appliances and are exposed to the dangerous agency or power which drives or makes serviceable such equipment and appliances. Not only are those employees exposed to such dangers, but all other employees therein are more or less exposed to them. Extraordinary care and skill are required in the handling and management of said equipment and appliances to prevent serious accidents. The superintendent of the appellee's building realized the danger surrounding the employees, as shown by him when testifying about the drunkenness or intoxication of the deceased which he had observed on a certain occasion, when he said: "I told Delscamp he would have to quit it, and he said he would cut it out; I told him if he didn't cut it out I would not feel the confidence to let him take charge of a high-pressure plant, because there might be something happen to a lot of sick people; we could not take a chance." As the proof

shows that the conducting of this hospital was, in fact, extra-hazardous, appellee must be held liable to appellant under the Workmen's Compensation act if the deceased was injured in an accident arising out of and in the course of his employment, as it is an occupation or enterprise in which statutory or municipal ordinance regulations for the regulating of machinery and appliances and for the protection and safeguarding of the employees or the public therein have been imposed, as provided by said clause 8.

Appellee makes the further point that its hospital is only a business or occupation within the meaning of said statute, and is not an "enterprise" within the meaning of said clause 8, according to the definition by this court of the word "enterprise" in the case of *Uphoff* v. *Industrial Board, supra.* The statute does not define the word "enterprise" in connection with the Workmen's Compensation act. The definition of that word as given in the *Uphoff case* is applicable to appellee's business or occupation. It was said in that case: "An enterprise is 'an undertaking of hazard; an arduous attempt.' (15 Cyc. 1053.) Lexicographers define an enterprise as 'an undertaking; something projected and attempted; an attempt or project, particularly an undertaking of some importance or one requiring boldness, energy or perseverance; an arduous or hazardous attempt, as, a war-like enterprise.'" The business of appellee is an undertaking of hazard, as already shown, because it is an extensive business requiring a seven-story building and the use of machinery and appliances and equipment aforesaid, and which is regulated by the city of Chicago, presumably because it is carrying on a business extra-hazardous.

The evidence in the record clearly proves that the deceased fell down the stairway onto the concrete floor while in the discharge of his duties. There were no circumstances tending to show that the injuries were self-inflicted or that they were sustained by reason of any violence to him by some other person, and there is no contention that his in-

juries were due to any cause other than a fall down the stairs. He was found within five minutes after the injury. Just before starting down the stairway, and, as the evidence shows, within less than ten minutes before he was found in his injured condition, he receipted for one or two loads of coal for appellee, which was a part of his duties as such employee. The two parties who hauled that coal and took his receipts testified for appellee that at that time he was intoxicated, but the evidence shows that he was not so intoxicated as to be incapacitated from receipting for the coal. One of them testified that four or five minutes after signing the coal receipt he saw the deceased on a stretcher, injured. Clarence Moore testified for appellant that he saw Delscamp, off and on, the day of the injury from about 8:30 o'clock A. M. until about 3:40 P. M., in his working clothes, working in the hospital; that he saw him at three o'clock P. M. in his office, talking to a salesman, and that after the salesman went out he talked to Delscamp about five minutes; that they both looked in the fire-box, and that Delscamp said it was going all right, and went out into the engine room, and that thereafter, about 3:40 P. M., witness went into the engine room and saw him talking to McGrew, the steam-fitter of appellee, who had a piece of pipe in his hand and who was doing some repair work in the Nurses' Home, which is a part of the hospital, and that he next saw him at about 4:05 or 4:15 P. M., lying where he was injured; that when he talked with him he was normal, and that he did not "notice any liquor or the influence of liquor about him," and that he was not under the influence of liquor that day. McGrew, the steam-fitter, testified that he saw Delscamp working at the hospital that day and that he worked with him; that he saw him about three o'clock P. M. in the boiler room, talking to some man witness did not know; that about a quarter to four he talked to him and asked him about putting a valve on the outlet of the

steam trap, and that he explained to him (McGrew) the working of the condensation in the system in the Nurses' Home, which is a part of appellee's hospital, which took him about ten or fifteen minutes; that he left Delscamp at four o'clock, and that Delscamp said he had to fix a radiator on the fifth floor. He further testified that Delscamp was normal and apparently feeling good on that day; that his conversation was good and that he was not under the influence of liquor. Rose Nelson testified that she talked to Delscamp about ten minutes that day in the engine room at about ten minutes to four, and that his condition was normal, and he was walking around in the engine room dressed in his working clothes. The evidence further shows that his time to go off duty at the hospital that day was at six o'clock P. M., provided the man to relieve him came at that time.

Several witnesses testified for appellee that Delscamp was drunk on that day. Several of them testified that they saw him drink whisky and beer at the saloon across the street from the hospital on that day,—as much as four or five glasses of whisky and some beer. One witness, who was training to become a nurse in the hospital, testified that she saw Delscamp coming down the rear stairway, past the window near which she was sitting, on the second floor, about ten minutes before he was found; that he had hard work to get down stairs, could not walk straight, staggered and clung to the railing, and that, from what she saw, in her opinion he was intoxicated. One witness testified that Delscamp never worked at the hospital at all that day.

Under the facts as shown in this record the findings of the Industrial Board that the relation of employer and employee between appellee and Delscamp existed at the time of his death, that the deceased was not so intoxicated as to take him out of the course of his employment, and that the injury causing his death did not result directly from his in-

toxicated condition, must be sustained. If he had been in such a state of intoxication as to totally incapacitate him from performance of his work the injury and death might properly be said to arise out of his condition rather than his employment. Before drunkenness can be said to bar a recovery under the Workmen's Compensation act the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment. (*Frith* v. *Owners of Steamship Louisianian,* 2 K. B. 155; 5 B. W. C. C. 410; *O'Brian* v. *Star Line,* 45 Scotch L. T. 935; 1 B. W. C. C. 177.) Whenever an employee is so drunk and helpless that he can no longer follow his employment he cannot be said to be engaged in his employment, and when injured while in that condition his injury does not arise out of his employment. But intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury. Our statute was not designed to make contributory negligence of the employee, or a defense of that nature, a bar to his recovery under the Workmen's Compensation act, where, as in this case, his injury arose out of and in the course of his employment. *Alexander* v. *Industrial Board,* 281 Ill. 201.

. The Appellate Court erred in holding, as a question of law, that the appellee was not bound by the provisions of the Workmen's Compensation act. The judgment of that court is therefore reversed, and for the reasons aforesaid the judgment of the circuit court is affirmed.

> *Judgment of Appellate Court reversed.*
> *Judgment of circuit court affirmed.*