# AGNES J. FOGARTY v. MARTIN HOTEL COMPANY AND ANOTHER.

101 N. W. (2d) 601.

March 4, 1960—No. 37,877.

*Duane M. Peterson* and *Richard H. Plunkett,* for relator.
*McLeod & Gilmore,* for respondents.

KNUTSON, JUSTICE.

Certiorari to review an order of the Industrial Commission denying compensation to dependents of a deceased employee.

The facts involved in this case are not in serious dispute. The deceased employee, William J. Fogarty, was 54 years of age and was employed as a bellhop at the Martin Hotel in Rochester. On January 19, 1957, he came to work at the hotel at approximately 12:15 or 12:30 p. m. The desk clerk, one Lester Bantley, did not notice anything unusual about him at that time, although a telephone girl on duty mentioned that she thought that he had been drinking. At about 1:30 p. m. the desk clerk smelled liquor on Fogarty's breath and requested that he quit drinking on the job. Bantley did not see him again until about 2 p.m., and in the meantime Fogarty was carrying bags out of the hotel and up and down the elevator for guests of the hotel in the course of his employment. At 2 p. m. Bantley noticed that Fogarty was having some difficulty with his speech and attributed this difficulty to intoxication. Bantley stated that he felt that the deceased was becoming gradually more intoxicated as the afternoon wore on. At 3 p. m. Fogarty left the hotel desk and was not seen again until shortly after 4 p. m. At that time one of the guests in the hotel complained to Bantley that he could not get into the washroom on the

first floor. Upon investigation, Bantley found Fogarty lying on the floor of the washroom with his feet up against the door. There was no evidence that Fogarty had been injured, and it was Bantley's opinion that he had passed out from drinking. Bantley tried to talk to Fogarty but received no response. He thereupon left Fogarty in the washroom and called Fogarty's wife by telephone and requested her to come and take him home. After making this call, Bantley returned to the washroom and found Fogarty standing on his feet leaning against the doorcase. His head was nodding up and down, and he did not speak or otherwise communicate with Bantley. Bantley put Fogarty's overcoat on his right arm and half carried and half walked him down the hallway, a distance of some 25 to 35 feet, to a place near a door leading to the rear stairway. The door leading to the stairway was closed. Bantley had told Fogarty's wife to pick him up near the rear entrance. In walking down the hallway, Bantley had trouble holding Fogarty upright and had placed his left arm over Bantley's shoulder. Bantley had his right arm around deceased's waist in order to assist him in walking down the hall. Upon reaching the rear of the hallway, Bantley leaned Fogarty up against a door and waited about 15 minutes for his wife to arrive at the rear entrance of the hotel. During that time Fogarty did not speak to him or otherwise indicate that he apprehended what was going on, and Bantley was of the opinion that his failure to respond was due to intoxication. Bantley, leaving Fogarty leaning up against a door some distance from the door leading to the rear entrance, returned to his desk to attend to some people, and, when he returned some 10 minutes later, he found Fogarty lying on the second landing of the basement stairway.

The basement stairway leads downward from the hallway entrance door. The first flight goes down four or five steps and then pinwheels to the left with V-shaped steps, the apex of the V being to the left. These steps are about three in number and stop at a landing, designated in the record as the first landing, from which there is a door leading to the outside alley. There is a banister on the right side of the hall leading down the first flight of stairs to the place where the V-shaped steps begin. From the first landing the stairway continues down about

five or six steps to a second landing, and the steps continue down from the second landing to the basement. There is no banister in the area from the first landing down to the second landing. Fogarty was found lying on the second landing. He had received a severe blow on his head and was bleeding. He was taken to a hospital in an ambulance and failed to regain consciousness. He died the next morning. He had been employed by the hotel for about 8 months prior to this accident, and during this period he had gone up and down these stairs numerous times without any difficulty.

A pathologist at the Mayo Clinic testified that an autopsy was performed and that a blood test indicated that there were 70 milligrams of alcohol per 100 cc. of blood in the deceased's body at the time of his death. A chemist employed by the city of Minneapolis testified by deposition that, based upon the rate of oxidation of alcohol in a human body, which was determined by numerous experiments, it was his opinion that the deceased had .2858 percent of alcohol in his blood at the time of the accident. This was also expressed as 285.8 milligrams of alcohol per 100 cc. of blood. He further testified that in order to obtain that percentage of alcohol in a person of deceased's size it would be necessary for him to drink 11.4 ounces of 100-proof whiskey or eleven and one-half 12-ounce bottles of 4-percent beer. He stated that he had never seen a person with that much alcohol in his system who could walk alone or talk distinctly and that such person definitely would show the effects of alcohol in many other ways. He testified further that a person with .28 percent alcohol in his blood would have difficulty walking and would be likely to fall if attempting to go down stairs.

The referee before whom the evidence was submitted found that Fogarty suffered an injury arising out of and in the course of his employment and that the employee's intoxication was not the natural and proximate cause of his injury and death. On appeal, the commission reversed. It found:

"That said fatal accident did not arise out of and in the course of the employe's employment.

"That this employe's intoxication was the natural and proximate cause of said accidental injury and death."

If either finding of the commission is sustained by the evidence, there must be an affirmance.

M. S. A. 176.021, subd. 1, reads as follows:

"Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter. Every such employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence, unless the injury or death was intentionally self-inflicted or when the intoxication of the employee is the proximate cause of the injury. The burden of proof of that fact is upon the employer."

■ Petitioner contends that under this statutory provision the intoxication of decedent must be the sole proximate cause of the injury to bar recovery. She argues that here the employer was negligent in the maintenance of the stairway down which decedent fell and also in moving decedent from a place of safety and leaving him where he might be expected to attempt to negotiate the stairway and that such acts of negligence contributed to the accident or constituted an intervening cause; therefore, that the intoxication of decedent was not the sole proximate cause and consequently does not bar recovery. Under this statute, neither the negligence of the employer nor the contributory negligence of the employee is controlling in determining the right to compensation.

In State ex rel. Chambers v. District Court, 139 Minn. 205, 207, 166 N. W. 185, 186, 3 A. L. R. 1347, 1349, we said:

"* * * It is unimportant whether the cause of the accident is referable to a tortious or a blameless act, or whether if tortious the employer or some third person is blameworthy, or even that the employee is at fault if not wilfully so. The statute requires compensation of the employer, * * * 'in every case of personal injury or death of his employee, caused by accident, arising out of and in the course of employ-

ment, without regard to the question of negligence, except accidents which are intentionally self inflicted or when the intoxication of such employee is the natural or proximate cause of the injury * * *.' "

In State ex rel. Green v. District Court, 145 Minn. 96, 98, 176 N. W. 155, 156, we said:

"In controversies under the Workmen's Compensation Act, the contributory negligence of an injured employee is not a bar to his right to compensation. The intoxication of a person injured * * * constitutes a bar to relief under the compensation act only when shown to be the proximate, as distinguished from the contributory, cause of the injury complained of. This distinction necessarily follows from the express language of the statute, by which contributory negligence of the employee is expressly excluded from consideration in determining the liability of the employer."

■ In cases of this kind we are dealing with the cause of the injury as distinguished from the question of whether either employer or employee was at fault in the technical sense.

■ Whether the intoxication of the injured workman constitutes the proximate cause presents a question of fact for determination by the commission.

■ Where the evidence, whether direct or circumstantial, is such that it reasonably supports the commission's findings, applicable rules require us to sustain it.[1]

■ Where reasonable minds might reach different conclusions based upon inferences which may reasonably be drawn from the evidence, the determination of the factfinder is conclusive.[2]

■ Where circumstantial evidence reasonably permits different inferences, the choice of the inference to be drawn rests with the factfinder. In Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 388, 18 N. W. (2d) 121, 124, we said:

"Where, upon circumstantial evidence in civil cases, there is a rea-

---

[1]See, Kopp v. Bituminous Surface Treating Co. 179 Minn. 158, 228 N. W. 559.

[2]State ex rel. Green v. District Court, 145 Minn. 96, 176 N. W. 155.

sonable basis for diverse inferences, the choice of an inference made by the fact-finding body is to be sustained, unless (1) the conflicting inferences stand in equilibrium so that reasonable minds cannot prefer one over another, or unless (2) the choice of inference is otherwise based on mere conjecture and speculation, or unless (3) the inference adopted is manifestly and undeniably contrary to the weight of the evidence as a whole. Clearly, it is not necessary that the evidence in support of the inference adopted must outweigh other reasonable inferences so as to demonstrate their impossibility."

■ Here the evidence clearly shows that the employee's intoxication was, as found by the commission, "of such a degree it was next to comatose." He had negotiated the stairway down which he fell innumerable times without mishap when sober. He was left in a place of safety, if he had remained there. We think that the commission's finding that his intoxication was the proximate cause of his injury is amply sustained by the evidence.

■ The commission also found that the fatal accident of the employee did not arise out of and in the course of his employment. When an employee renders himself so intoxicated that he cannot perform any of the usual duties of his employment, it can hardly be said that an injury sustained while in that condition arose out of and in the course of his employment.

The statutes of the various states vary considerably as to the effect of intoxication on the right to compensation,[3] and as a result many of the authorities are of little help without reference to the statute upon which they are based. With respect to the question of whether a person intoxicated can be said to have abandoned his employment, we find the following statement in 6 Schneider, Workmens Compensation Text (Perm. ed.) § 1588:

"The principle usually applied to cases involving the compensability of injuries resulting from the alleged serious and wilful misconduct of an employee due to his intoxication, is: 'Whenever an employee is so drunk and helpless that he can no longer follow his employment, he

---

[3]1 Larson, Workmen's Compensation Law, § 34.30, et seq.

cannot be said to be engaged in his employment, and when injured in that condition his injury does not arise out of his employment.' "[4]

In this case the employee concededly was "so drunk" that he could no longer perform any of the usual duties of his employment. The alcoholic content in his blood, the condition in which he was found in the washroom, and his actions thereafter all evidence a state of intoxication where he was practically helpless. Under these circumstances, it can hardly be said that the injury arose out of and in the course of his employment. This finding also is amply sustained by the evidence.

Affirmed.

---

[4]See, Zee v. Gary, 137 Fla. 741, 189 So. 34; Hahnemann Hospital v. Industrial Board, 282 Ill. 316, 118 N. E. 767; Emery Motor Livery Co. v. Industrial Comm. 291 Ill. 532, 126 N. E. 143.