CLOTILDE HERNÁNDEZ LÓPEZ, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; EVANGELIO SALGADO, Injured worker.

No. O-71-239.     Decided December 13, 1972.

P. *Roldán Figueroa* and *José F. Vázquez O'Neill* for petitioner.
*Eduardo Cuchí Coll* for the heirs of the deceased worker.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This is a petition for review brought in accordance with § 11 of the Workmen's Accident Compensation Act, 11 L.P.R.A. § 12. We must review a Decision of the Industrial Commission by which petitioner was declared an uninsured employer.

The following comes forth from the synthesis of the testimonies of the witnesses made by the Industrial Commission itself on its Decision of March 4, 1971. At the time of the events (1965) petitioner was 67 years old. By that time he had already retired from agriculture because by orders of the physician he could not engage in hard physical labor. For five

years he had lived on Social Security. Before that he had four cuerdas of sugarcane, which he destroyed when he retired from agriculture as business. He remained with two cuerdas of coffee, fruit which he collected himself with the assistance of his family. At the time of the events he did not hire or engage workers or farmhands. Formerly, when he cultivated the four cuerdas of sugarcane as business, he had the policy of the State Insurance Fund. When he retired from agriculture and when he ceased employing workers he also ceased buying said policy.

■ As to the specific facts of the case, it appears that the deceased, Evangelio Salgado, was petitioner's neighbor and friend for about 15 years. Sometimes, when the avocado trees bore fruit, once a year, Evangelio collected avocados on petitioner's property and both distributed them half and half. It was a family operation and not a commercial operation. If they had sold the avocados the year of the accident it is considered that each one would have received $3.00. Petitioner had given permission to Evangelio to that effect but the date of the events, a Sunday, he did not know that Evangelio was collecting avocados. That day Evangelio fell from a tree and died as a result of the bruises he received.

Witness Pablo Alvarado Colón, petitioner's witness, testified that Evangelio "used to drink beer." The Institute of Forensic Medicine of the School of Medicine of the University of Puerto Rico established that when the deceased died, the level of alcohol in his blood must have been between 20 to 26 hundredths of one percent of alcohol by weight, which placed him "under the influence of intoxicating liquor." It should be noticed that the Vehicle and Traffic Law provides that if in the blood of a person there is fifteen hundredths of one percent or more, by weight of alcohol, it shall be presumed that the person "was under the influence" of intoxicating liquor. 9 L.P.R.A. § 1041 (b) (3).

■ It is true that § 11 of the Workmen's Accident Compensation Act, 11 L.P.R.A. § 12, provides that the review of the decisions of the Industrial Commission may be granted only on questions of law, or upon weighing of the evidence when such evidence is of an expert nature, but in the case under our consideration the controversy centers on whether or not petitioner is an uninsured employer and this is a determination of fact and of law, which is reviewable as a question of law. *Gallart, Mgr.* v. *Industrial Commission,* 89 P.R.R. 570, 577 (1963) ; *Arraiza* v. *Industrial Commission,* 85 P.R.R. 13 (1962) ; *Romero* v. *Industrial Commission,* 73 P.R.R. 750, 757 (1962). In this last case the Court concluded that even though the activity in question yielded some financial profit to petitioner, said activity was not habitual or regular but merely sporadical and it reversed the decision of the Industrial Commission by which it had been determined that petitioner was bound to be insured.

■ In the instant case the facts reveal that the activity carried out by the deceased when the accident occurred was of an accidental or casual nature and it was not a part of any business of petitioner. An accident suffered by a person while performing work of an accidental or casual nature not included in the business, industry, profession, or occupation of the employer is not covered by the Workmen's Accident Compensation Act. Section 2 of the aforesaid Act, 11 L.P.R.A. § 2; *Arraiza* v. *Industrial Commission, supra.*

In view of the foregoing, the Decision appealed from and the previous order of the Manager of the State Insurance Fund of October 15, 1965, will be reversed and the petition brought in this case will be dismissed.

Mr. Justice Ramírez Bages dissented in an opinion in which Mr. Acting Chief Justice Pérez Pimentel concurred.

—O—

MR. JUSTICE RAMÍREZ BAGES, with whom Mr. ACTING CHIEF JUSTICE PÉREZ PIMENTEL concurs, dissenting.

San Juan, Puerto Rico, December 13, 1972

I dissent. For the purpose of sustaining that petitioner was not an employer according to the Workmen's Accident Compensation Act, the majority opinion is bound to rely on specific isolated facts such as (1) the fact that petitioner testified that he lived on Social Security; and (2) that he had retired from agriculture reason for which he discontinued his insurance with the State Insurance Fund. Petitioner ceased growing sugarcane on his property that being the reason for which he discontinued his insurance. But he still maintained his property as business since he collected the coffee it produced and maintained the employment of the deceased in the annual harvesting of the avocados which the trees on the property bore to the point that some days before the accident petitioner had gone to the house of the deceased workman to ask the latter to collect said avocados. Besides, it unduly emphasizes an isolated testimony to the effect that the deceased "used to drink beer" together with the report of a toxicologist with regard to the level of alcohol in the blood of the deceased worker's body.

We are dealing with what is called in common law a "hard" case, that is to say, a case where the losing party is going to sustain serious economical consequences for if the opinion of the Commission had prevailed, petitioner would face the payment of such an amount that it would endanger his property. On the other hand, if compensation is denied to the widow and children of the deceased worker, most likely they would remain at the mercy of public charity.

In harmony with the legislative purpose of favoring the worker in cases such as the instant case, we should have

affirmed the decision of the Industrial Commission. Hereinafter we set forth the grounds on which we base this conclusion.

The Commission summarizes the evidence presented thus:

"1. That on August 29, 1965, Mr. Evangelio Salgado was collecting avocados with Mr. Pablo Alvarado on the property of Dr. Clotilde Hernández when he fell from the avocado tree and injured himself, dying hours later in the hospital.

"2. That the day before the accident Don Clotilde had gone to the house of the worker to ask him to collect the avocados.

"3. That every year the worker went to collect the avocados for Don Clotilde and they shared the profits half and half.

"4. That the worker had worked before for Don Clotilde collecting coffee and sugarcane.

"5. That Dr. Clotilde Hernández did not have a policy, with the State Insurance Fund to cover these risks."

Besides, the Commission ruled that:

"We wish to point out that in this case no kind of evidence whatsoever appeared to establish positively that the accident of the worker was due to possible intoxication ... the only evidence we have about this particular is the medical report of Dr. Didney [sic] Kaye, of the Institute of Forensic Medicine of Puerto Rico, submitted as additional evidence by the employer's counsel on October 9, 1970. In the same Dr. Kaye certifies that the autopsy performed on the deceased worker revealed that the blood contained a high percentage of alcohol and that in his opinion that content of alcohol in the blood which the worker had reveals that he was 'under the influence of alcohol.' As we said before this opinion does not prove that the accident was caused by the worker's drunkenness."

In the aforementioned report submitted by the Associate Director of the Institute of Forensic Medicine of the School of Medicine of the University of Puerto Rico it is said that a blood specimen of the deceased worker contained .04% of alcohol by weight upon death; that, in his opinion, if the accident occurred eleven hours earlier (in effect Salgado suffered the accident at about 12 o'clock noon. He died at

eleven o'clock at night of that same day) the blood alcohol level when the accident occurred must have been of 20% to 26% of alcohol by weight which would render one to be "under the influence of alcohol."

The widow of the deceased testified that her husband did not drink alcohol during those days and the night before they went to bed from 7 to 8 at night and when she woke up at 7 o'clock in the morning her husband had already left. A son of the latter testified that he saw his father on Sunday and that that morning he had not taken liquor.

There was no evidence of the cause of the fall of the deceased. According to the Commission, Pablo Alvarado, the only witness of the accident, merely made reference to the fact that Salgado fell from a tree while collecting avocados.

Petitioner argues that:

". . . there is no evidence whatsoever in the record to the effect that the fall was due to any cause external and extraneous to the will of the worker, as for example: that a branch of the tree had split off; that he had suffered a sudden disease as a heart attack; that some insect such as a wasp, etc. . . . had bit him; that a strong wind had suddenly moved the tree, that some person had thrown a stone at him or had caused the fall in any other manner; that the tree had split off and fallen to the ground with the worker, or for any other reason."

The Workmen's Accident Compensation Act excludes from its benefits ". . . workmen and employees whose work is of an accidental or casual nature and is not included in the business, industry, profession, or occupation of their employer . . . ." Besides, it provides that those accidents which occur "(2) When the workman or employee is intoxicated, provided such intoxication is the cause of the accident" are not compensable labor accidents and shall not entitle a workman or employee to compensation. Said law provides also that ". . . being of a remedial character, shall be construed liberally, and any reasonable doubt that may arise

as to its application with regard to the existence of causal relation between the work or occupation of the workman or employee and the injury, disability or death . . . shall be decided in favor of the workman or employee, or his beneficiaries." Finally, the aforesaid law provides that the review of a decision of the Industrial Commission ". . . may be granted only on questions of law, or upon appreciation of the evidence when such evidence is of an expert nature." (11 L.P.R.A. §§ 2, 5, and 12.)

1.—The work of collecting avocados which the deceased worker performed annually during the harvest on petitioner's property was not accidental or casual since he had carried it out during several years at the request or with the consent of petitioner and the latter benefited from the same notwithstanding the fact that the resulting income was meager. Even though casual the work was comprised within petitioner's business or occupation.

2.—The defense of intoxication of the worker has been alleged in the instant case. By intoxication it is understood a state or condition (a) where the worker is under the influence of intoxicating liquor to the point that he is not completely himself, his judgment is limited, or his acts or words or conduct are visibly and notoriously affected; (b) where the worker cannot continue his work, that is to say, that he cannot perform any of the usual duties of his employment. *Fidelity & Casualty Co. of New York* v. *Hodges*, 133 S.E.2d 406 (Ct. of App. Ga. 1963); *Ortega* v. *Ed Horrell & Son*, 362 P.2d 744 (Ariz. 1961); *Fogarty* v. *Martin Hotel Company*, 101 N.W.2d 601 (Minn. 1960).

In order that the above defense may prosper, the employer must show, by the preponderance of the evidence, that the worker's injury was caused solely by his intoxication; when other risks of the employment are present with the intoxication of the employee or contribute to cause the fall,

the compensation cannot be denied. There must be a causal relation between the intoxication and the resulting injury. The evidence of behavior patterns of individuals under the influence of alcohol should arise from medical experts and not from toxicologists. *Olivera v. Hatco Chemical Co.*, 150 A.2d 781, 788, 790 (N.J. App. Div. 1959); *Douglas Aircraft Co. v. Industrial Accident Com'n*, 306 P.2d 425 (Cal. 1957); *Allison v. Brown & Horsch Insulation Co.*, 102 A.2d 493, 497 (N.H. 1954); *Kulinka v. Flockhart Foundry Co.*, 75 A.2d 557, *affirmed* in *Bujalski v. Flockhart Foundry Co.*, 84 A.2d 468 (N.J. 1951).

Though it is true that there was expert evidence to the effect that there was a certain content of alcohol in the blood of the deceased, it is not less true, as set forth by the Commission, that there was no evidence to the effect that that condition was the cause of the accident. According to the recital of the evidence contained in the decision of the Commission, the only eyewitness of the accident was not questioned as to how and in what manner the accident occurred and about the cause of the same. On the contrary, said witness testified that when the worker fell from the tree, "they had collected about 150 avocados," in addition to 100 from the first tree and that "there were about 50 more avocados to collect" from the second tree; that the worker fell "at about two hours after having been collecting avocados." This testimony is not indicative of the fact that the deceased worker was in no condition of continuing his work or of performing the usual duties of his employment. Neither was there evidence to the effect that his judgment was limited or that his acts, words, or conduct were visibly and notoriously affected.

In view of the foregoing, we should have affirmed the decision of the Industrial Commission entered in this case on March 4, 1971.