Shirley M. MANTHEY, Widow of Elmer Manthey, deceased employee, Respondent,

v.

CHARLES E. BERNICK, INC., et al, Relators.

No. 51223.

Supreme Court of Minnesota.

Feb. 20, 1981.

Chadwick, Johnson & Bridell, Bloomington, for relators.

Kurt Deter, Sauk Rapids, for respondent.

**SHERAN, Chief Justice.**

Certiorari on the relation of the employer and insurer to obtain review of a decision of the Workers' Compensation Court of Appeals awarding respondent, the widow of employee, Elmer Manthey, dependency compensation. While conceding the employee's injuries and death arose out of and in the course of his employment, relators urge that the finding that employee's intoxication was not the proximate cause of his injuries and death is clearly erroneous. Our review of the record compels the conclusion that the finding has sufficient support in the evidence as a whole and the inferences permissible therefrom.

■ Minn.Stat. § 176.021, subd. 1 (1980) provides the defense of intoxication to an employer in the following language:

Every ... employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence, unless the injury was intentionally self-inflicted or when the intoxication of the employee is the proximate cause of the injury. The burden of proof of such facts is upon the employer.

Over a period of many years this court has construed the statute narrowly, holding that intoxication is a bar to compensation "only when shown to be the proximate, as distinguished from the contributory, cause of the injury complained of." *State ex rel. Green v. District Court,* 145 Minn. 96, 98, 176 N.W. 155, 156 (1920); *see Olson v. Felix,* 275 Minn. 335, 146 N.W.2d 866 (1966). Whether an employee's intoxication is the proximate cause of his injuries or death is an issue of fact and its resolution by the Court of Appeals, like other findings of fact, will be reversed by this court only if the evidence and permissible inferences clearly require reasonable minds to adopt a contrary conclusion. *Kahn v. State,* 289 N.W.2d 737 (Minn.1980); *Fogarty v. Martin Hotel Co.,* 257 Minn. 398, 101 N.W.2d 601 (1960). With these principles in mind we review the evidence.

■ It appears from the record that the employer, a distributor of beer and pop, furnishes such products to "special events" like church or company picnics. On Sunday, September 10, 1978, employee was directed to transport a truck loaded with kegs of beer to a church picnic at Gilman, a small town about 15 miles from the employer's warehouse at Waite Park. Driving separately, he and a friend and fellow employee, John Staneart, arrived at the warehouse about 9:30 a. m. and loaded a beer truck which employee then drove to Gilman, with Staneart following in his own pickup. Staneart helped employee unload kegs and tappers at the beer stand, both men tasting the beer during this process to determine that it was not sour. They remained at the stand, each consuming several beers, until they received payment from a parish worker.

Shortly after noon the men left in Staneart's pickup, drove about for a time, and parted at the warehouse about 3 p. m. Employee then took his own automobile, purchased some fried chicken, and stopped at the home of his wife's parents in St. Cloud, saying he had come in to obtain a fitting for one of the tappers. He stayed half an hour, called his wife to say he would not be home promptly at suppertime, and then returned to the picnic. Neither his wife nor her parents noticed anything about employee which suggested that he had been drinking.

Employee returned to the picnic about 5 p. m. and stayed at the beer stand, helping to sell beer until it closed 3 hours later. Louis Pietrzak, the parishioner in charge of the stand, and another parish worker, Larry Faber, noticed no sign of intoxication in employee's speech, appearance, or actions during this time although each saw him drinking beer.

After the stand closed employee replaced the empty kegs on one side in the back of the truck and with the assistance of the other men reloaded the full kegs, stacking them high on the other side. He then left for the warehouse and, according to Pietrzak, "took off awfully fast," although Pietrzak also testified that he had never thought employee should not be driving. The employer's plant manager testified that employee was a fast driver who had been cautioned on a prior occasion about his speed.

Joseph Cielinski, driving south on a county road south of Gilman, was passed by employee a short time later at a point shortly before the road made an S curve. Cielinski thought that he himself was going 45 or 50 miles per hour and said that employee was not going "unusually fast," although a deputy sheriff called to the scene said that Cielinski had estimated employee's speed at 65 miles per hour. Cielinski said that in passing employee "caught the edge of the road" and was "pulled" off the gravel shoulder into the left ditch. In a distance of approximately 450 feet employee drove out of the ditch, onto the shoulder, and back onto the road, but then in a continuous motion went off the right side of the road into the right ditch, travelled 230 feet and hit an embankment, causing the truck to roll over and burst into flame. Employee suffered burns from which he died 6 days later.

After emergency treatment at a St. Cloud hospital employee was transferred to the Ramsey County Hospital burn unit. The Ramsey Hospital record states that employee "[a]dmits to consuming 'too much' beer this evening." A blood alcohol test administered at 12:30 a. m. showed a .12 alcohol concentration in employee's blood, and Janis Seestrom, a chemist for the Bureau of Criminal Apprehension, expressed the opinion that this amount of alcohol would affect a person's ability to drive. Asked to assume that the accident had occurred as described and that employee was driving at least 10 miles over the speed limit, Ms. Seestrom expressed the opinion that the amount of alcohol employee had consumed "would be a factor" in the accident. She also expressed the opinion with reasonable medical certainty that employee's blood alcohol level at the time of the accident was .16, based on a "very conservative burn-off rate."[1]

Staneart said that because the truck employee was driving was high and somewhat top heavy, once a driver lost control it would be difficult to regain. Employee apparently had not had extensive experience driving the truck, and Staneart had backed the vehicle into its place beside the beer stand for him. This witness, who had been with employee on many occasions, testified also that employee "could handle his liquor" and "could drink quite a bit" without observable effect.

---

1. Dr. Lynn Solem, who treated employee's burns, testified that he thought morphine administered to employee shortly after the accident might tend to slow metabolization of alcohol because the liver metabolizes both drugs, while Ms. Seestrom said she knew of no scientific evidence that this drug or the other medicines given employee would affect either blood alcohol concentration or the rate of metabolization.

As relators perceive the record, it compels a finding that employee's intoxication was the proximate cause of his injuries and death. They rely principally on the employee's blood alcohol level of .16, the evidence that he had been drinking beer until the church stand closed, the admission disclosed by the hospital record, the expert opinion of Ms. Seestrom that a blood alcohol concentration of .12 would affect a person's ability to drive, and the nature of the accident which, they contend, demonstrates "perceptional error" caused by intoxication. Although a finding that intoxication was the proximate cause of the accident and employee's resultant injuries and death would clearly have sufficient evidentiary support, we are satisfied that the evidence as a whole permitted the contrary finding made by the compensation judge and the Court of Appeals.

Admittedly the employee committed a misdemeanor in driving with a blood alcohol concentration of .16. Minn.Stat. § 169.121, subd. 1 (1980). But that fact does not invariably compel the inference that a person is incapable of driving. As we recognized in *Olson v. Felix*, 275 Minn. 335, 146 N.W.2d 866 (1966), individuals have different tolerances for alcohol. In that case the deceased employee had a blood alcohol concentration of .3 and experts testified that persons with such a concentration would lack rationality and be nearly comatose. In spite of this evidence, a finding that the employee's intoxication was not the proximate cause of the accident resulting in his death was affirmed because other evidence concerning his actions a short time before the accident demonstrated that he had been capable of doing his work and had in fact exercised some judgment in doing so. In this case there is considerable evidence that employee showed no outward signs of intoxication and that he had been able to perform the work required to dismantle the beer tappers and reload the kegs and tappers in his truck. This evidence, as well as Staneart's testimony, tends to establish that he had considerable tolerance for alcohol. Moreover, he obviously had consumed considerably less intoxicating liquor than had the employee in *Olson*. It is true that impairment of employee's judgment due to intoxication might be inferred from the fact that he had stacked the full kegs high on one side of his truck. On the other hand, he loaded the empty kegs without help before asking the other men for a hand with the full ones, and he could have decided not to take the time to rearrange his cargo more evenly merely because he was eager to finish his workday. Such conduct could be negligence not related to his intoxication. Nor can it be said that the opinions of the expert witness and the evidence that employee had been drinking in the early evening and admitted to drinking too much beer at the hospital establish conclusively that his intoxication was the proximate cause of the accident in light of the other evidence bearing on that issue.

The nature of the accident would reasonably support the inference that employee's perceptions were affected by his intoxication, causing him to misjudge distances on both occasions when the truck wheels went onto the shoulder of the road, but these errors might not of themselves have caused the vehicle to go into the ditches if it had not been top heavy and unbalanced by the weight of the full kegs. In view of these factors we conclude that whether employee's intoxication was the proximate cause of his injuries and death was a question of fact on which reasonable minds could differ. Consequently, whether or not we might have reached a different conclusion if required to decide that issue, we will not disturb the finding made by the Court of Appeals.

Respondent is awarded attorneys fees of $400.

Affirmed.

OTIS, Justice (dissenting).

The majority opinion holds that the findings of the Workers' Compensation Court of Appeals are not manifestly contrary to the evidence, and therefore, affirms the award of dependency compensation to the decedent employee's widow. I do not agree.

Minn.Stat. § 176.021, subd. 1 (1980), provides:

> Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter. Every such employer is liable * * * to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence, unless the injury was intentionally self-inflicted or when the intoxication of the employee is the proximate cause of the injury. The burden of proof of such facts is upon the employer.

The evidence is uncontroverted that the decedent at the time of his death was intoxicated and by our legal standards was a drunk driver. Before he died he admitted to consuming "too much beer." Nevertheless the court of appeals found his intoxication was not the proximate cause of the accident which killed him. Under our statute, Minn.Stat. § 169.121, (1)(d) (1980), a person is presumed to be intoxicated if there is a .10 alcohol concentration in his blood while operating a motor vehicle.

In the instant case, the concentration of alcohol in the decedent's blood, when tested at the hospital at 12:30 a. m., was .12. The accident, however, had occurred over two and one-half hours earlier, at 9:50 p. m. At that time, the alcohol concentration was .16 according to the conservative estimate of a chemist for the Bureau of Criminal Apprehension who testified that the decedent must have consumed at least ten 3.2 beers, plus one more beer for each of the hours he had been drinking, in all something in excess of thirteen beers, before the decedent began to load and operate his truck.

He stacked twelve full kegs on top of each other on the right side of the truck. A friend's suggestion that he distribute the weight more evenly was disregarded, though the truck was unbalanced with the load so arranged.

The majority opinion of the Workers' Compensation Court concedes that, owing to the distribution of the load, the truck may have been top-heavy, but implies that the imbalance was an intervening cause, overlooking the fact that the problem was of decedent's own making at a time when he was intoxicated.

In the moments immediately prior to the crash while in a 55-mile-an-hour zone, decedent accelerated to 65 miles an hour to pass another vehicle, apparently misjudged his clearance on the left, and lost control of the truck. He veered to the left lane, across a gravel shoulder and into the ditch, continuing for a distance of 454 feet. During none of that time did he apply his brakes. Instead, he steered the vehicle out of the ditch, back over the gravel shoulder, across the left lane, back into the right lane, over the right hand shoulder into that ditch, and after travelling 232 feet collided with the embankment of a cross-road where the truck turned over and exploded. All this with no attempt to apply his brakes.

In the light of this undisputed testimony, to find that decedent's intoxication was not a proximate cause of either the faulty loading or erratic operation of the truck is tantamount to holding the injuries self inflicted by an employee's voluntary intoxication are now wholly compensable. I cannot subscribe to a rule which so unjustifiably and effectively nullifies the effect of Minn. Stat. § 176.021, subd. 1 (1980).

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.

SIMONETT, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.